Jorge SANTOS

v.

**Shirley S. CHATER, Commissioner of the Social Security Administration.**

Civil Action No. 95–30126–MAP.

United States District Court,
D. Massachusetts.

Sept. 30, 1996.

David Waldfogel, Western Mass. Legal Services, Holyoke, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION TO REVERSE COMMISSIONER OR FOR REMAND AND DEFENDANT'S MOTION TO AFFIRM COMMISSIONER*

(Docket Nos. 8 & 9)

PONSOR, District Judge.

## I. *INTRODUCTION*

Defendant Commissioner of Social Security ("the Commissioner") has filed an objection to Magistrate Judge Kenneth P. Neiman's Report and Recommendation that the Commissioner's motion to affirm the denial of Supplemental Security Income ("SSI") disability benefits to plaintiff Jorge Santos be denied. After *de novo* review, this court will adopt the magistrate judge's Report and Recommendation.

## II. *PROCEDURAL BACKGROUND*

The plaintiff, who was born on June 9, 1932 and has a fifth grade education, filed an application for SSI disability benefits on July 23, 1984. Plaintiff alleged an inability to work for the period of November 1983 to February 1985 due to an injury to his right leg and due to alcoholism. Administrative Record ("A.R.") at 59–69. Plaintiff's application for SSI benefits was initially denied on September 7, 1984, A.R. at 87, and, again, upon reconsideration on February 7, 1985. A.R. at 102.

In 1988, plaintiff was granted SSI benefits for Continuous and Organic Brain Syndrome due to his alcohol dependence. A.R. at 140. Although plaintiff was granted SSI disability benefits from January 1988 to the present, the Commissioner refused to find that plaintiff was eligible for SSI disability benefits from November 1983 to February 1985. Plaintiff is now challenging the Commissioner's refusal to grant SSI disability benefits for that period.

After originally denying SSI disability benefits to plaintiff for the period in question, the Social Security Administration ("SSA") subsequently re-examined plaintiff's case in light of the First Circuit's decision in *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118 (1st Cir.1986). Upon reexamination, SSA again denied benefits on April 13, 1992, A.R. at 115–16, and plaintiff sought review of the denial by an Administrative Law Judge ("ALJ") on October 21, 1992. A.R. at 117. The ALJ found that plaintiff was not entitled to SSI disability benefits because he was not disabled for the period at issue. A.R. 18–23. The SSA Appeals Council also denied plaintiff's request for review. A.R. at 3–4.

On June 14, 1993, plaintiff filed a complaint in United States District Court. A.R. at 188. In a decision dated June 28, 1994, Senior United States District Judge Frank H. Freeman reviewed and remanded the case to the Commissioner. A.R. at 187–196. Judge Freedman determined, contrary to the ALJ, that plaintiff, in conformity with *McDonald,* "made the necessary *de minimis* showing that his impairment or impairments were severe enough to interfere with his ability to perform basic work activities during the time period in question." A.R. at 194–95. Judge Freedman, therefore, determined that plaintiff had met one of the three threshold elements required under the five step analysis outlined in *Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982), discussed *infra.* He remand-

ed the case for further findings under the remaining steps of the analysis. A.R. at 194–95.

The ALJ conducted a second hearing on November 16, 1994, at which time expert testimony from a vocational expert was obtained. A.R. at 175–84. The ALJ still found plaintiff was not entitled to SSI disability benefits for the period from November 1983 to February 1985 because he was not disabled. A.R. at 160–66. Plaintiff again requested a review of the ALJ's decision by the SSA Appeals Council, and was again denied. A.R. at 151–A. The case is now before this court again.

On July 30, 1996, Magistrate Judge Kenneth P. Neiman issued a Report and Recommendation in which he recommended that this court grant plaintiff's motion to reverse, and deny defendant's motion to affirm, the ALJ's decision. As noted, after *de novo* review, this court will adopt the magistrate judge's Report and Recommendation.

### III. SUMMARY OF MEDICAL HISTORY

Plaintiff is a sixty-four year old male who has a history of physical and psychological problems. This court will follow the magistrate judge's helpful breakdown of plaintiff's medical history by viewing it in two parts: injury to plaintiff's leg and non-exertional impairments due to alcoholism.

#### A. Evidence of Injury to Plaintiff's Right Leg.

The record indicates that on May 16, 1984, plaintiff underwent surgery for the removal of an aberrant bone formation secondary to a 1983 fracture of his right ankle. A.R. 120–126. According to plaintiff's treating physician, Dr. J. Robert Kisiel, plaintiff was said to have healed well, but occasionally complained of some mild pain. A.R. at 126–27. Based solely on the condition of his right leg, Dr. Kisiel summarily concluded that plaintiff could resume any type of occupation. A.R. at 127.

Dr. Kisiel completed another report in December of 1984, in which he indicated that plaintiff was seen twice in September and once in October of that year. At these times plaintiff complained of tenderness, discomfort and pain in his ankle and calf, although his gait and range of motion were normal. A.R. at 128. While Dr. Kisiel commented that plaintiff's scar was well healed and that there was no indication of calf atrophy or surgical orthopedic management necessary, he did observe some swelling and prescribed anti-inflammatory medication. A.R. at 127.

On January 17, 1985, plaintiff was examined by another physician, Dr. Mohammad S. Bajwa. A.R. at 129–32. Dr. Bajwa noted that plaintiff complained of pain in his right ankle, especially when standing or walking, that plaintiff walked with a slight limp, and that he experienced dull to sharp pain even when he was at rest. A.R. at 129. Dr. Bajwa further noted that plaintiff gave a long history of heavy drinking and complained of urinary problems. A.R. at 129. Additionally, Dr. Bajwa indicated that plaintiff's only functional limitation was caused by the pain in his right ankle, which might cause some difficulty in standing or walking for prolonged periods of time. A.R. at 131.

#### B. Evidence of Plaintiff's Non–Exertional Impairment Due to Alcoholism.

The medical evidence of plaintiff's alcoholism begins with his September 1975 admission to a detoxification clinic. A.R. at 141–43. At that time, plaintiff was vomiting with frequency; he was subsequently placed on antabuse. A.R. at 142. After two days, plaintiff signed himself out of the facility against medical advice. A.R. at 142–43. Plaintiff was again admitted to a detoxification facility in May 1983 and, again, signed out against medical advice two days later. A.R. at 144.

In April of 1985, plaintiff completed a fourteen-day court ordered inpatient program at Rutland Heights Hospital as a result of his conviction for driving while intoxicated. A.R. at 145. Plaintiff was discharged with a recommendation to attend Alcoholics Anonymous meetings and continue counseling. *Id.* Thereafter, plaintiff was again admitted to hospitals as a result of his alcoholism. In April of 1986, plaintiff entered a detoxification facility for four days, received antabuse

and was discharged with instructions to follow up on an outpatient basis. A.R. at 147–48. In December 1986, plaintiff completed another fourteen-day court-ordered program at Rutland Heights Hospital. A.R. 150–51. Plaintiff's rehabilitation counselor, Ave M. Leonard, reported that plaintiff "tested middle stage alcoholic, but based on his own testimony, late stage may be more accurate." A.R. at 150. Leonard also suggested that from his own observation of plaintiff and plaintiff's past history perhaps another court order should impose further treatment on him because of his "inability or unwillingness to change." A.R. at 150–51.

As part of his 1988 claim for disability benefits, plaintiff underwent a psychological evaluation by Dr. Jose Pons, a clinical psychologist, in January 1988. A.R. at 137–38. Dr. Pons observed that plaintiff's mood was depressed, his hygiene was only fair, and that his reaction time was slow, but, nevertheless logical, coherent and thought-focused. A.R. at 138.

Dr. Pons found that psychological testing of plaintiff illustrated "a history of chronic alcohol dependence with serious organic changes associated to such condition." A.R. at 140. In addition, Dr. Pons stated that plaintiff "has a severe case of alcohol dependence and presents the type of personality configuration which requires ... mind altering agents to function within social context. The combination of these factors together with the presence of an affective disorder makes [plaintiff] a poor candidate for rehabilitation." A.R. at 140. Dr. Pons determined that plaintiff's prognosis was poor and offered a diagnosis of continuous alcohol dependence and organic brain syndrome, secondary to alcohol dependence. A.R. at 140.

## IV. DISCUSSION

### A. Standard of Review

■ The factual findings of the Commissioner in determining disability shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (1994). The Supreme Court has defined "substantial evidence" to as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "In reviewing the record for substantial evidence, [the court] must keep in mind that '[i]ssues of credibility and the drawing of permissible inferences from evidentiary facts are the prime responsibility of the [Commissioner].'" *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981) (quoting *Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir.1965)). The resolution of conflicting evidence in the determination of a disability is ultimately determined by the Commissioner, not doctors or courts. *Id.* Therefore, even if the facts permit diverse inferences, the court must affirm the Commissioner so long as there is substantial evidence in her determination; the mere possibility of another logical outcome is not sufficient. *Weiler v. Shalala,* 922 F.Supp. 689, 694 (D.Mass.1996). In short, a denial of SSI disability benefits will be upheld, unless the Commissioner "committed a legal or factual error in evaluating a particular claim." *Sullivan v. Hudson,* 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989).

### B. Disability Standard

A claimant is entitled to SSI benefits if, among other things, he is needy and under a disability. See 42 U.S.C. § 1382c(a)(3). According to the Act, Before an individual is considered to be disabled pursuant to the Act, he must be

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A). In addition, an individual claiming a disability under the Act must show that

> his physical or mental impairment or impairments are such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . 42 U.S.C. § 1382c(a)(3)(B). See generally *Bowen v. Yuckert*, 482 U.S. 137, 146–48, 107 S.Ct. 2287, 2293–95, 96 L.Ed.2d 119 (1987).

In determining whether the claimant is disabled, the Commissioner must use a sequential five-step analysis. The analysis proceeds with the following questions:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

\* \* \* \* \* \*

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Secretary of Health and Human Services*, 690 F.2d at 6–7 (citing 20 C.F.R. § 404.1520).

The first three questions are "threshold" tests. If the claimant is working (question one) or if he has the physical or mental capacity to perform basic work-related functions (question two), he is automatically considered not disabled. Conversely, if the claimant has an Appendix 1–type impairment (question three), he is automatically considered disabled. In either case, the claim is determined at the "threshold." Alternatively, if the claimant's ability to perform basic work-related functions is impaired significantly but not to the extent of an Appendix 1–type impairment, the Commissioner proceeds to the fourth and, if necessary, fifth questions. See *Goodermote*, 690 F.2d at 6–7.

### C. *Application*

█ In applying the *Goodermote* test to this case, the court is satisfied that plaintiff has met the threshold requirements of prongs one and two. It is undisputed that plaintiff was unemployed for the time period at issue, from November 1983 to February 7, 1985, thereby satisfying question one. The court is also satisfied that plaintiff's impairment was sufficiently severe to undermine his capacity to perform basic work-related functions. As Senior Judge Freedman stated in his June 28, 1994 decision:

Upon review of the entire Administrative Record, including the documentation relative to both plaintiff's ankle and alcohol problems, and the testimony before the ALJ, the [c]ourt concludes that plaintiff has satisfied step two of the *Goodermote* test, or sequential evaluation standard. Simply put, plaintiff made the necessary *de minimis* showing that his impairment or impairments were severe enough to interfere with his ability to perform basic work activities during the time period in question.

A.R. at 194–195. Judge Freedman subsequently remanded the case to the Secretary for further proceedings to continue at step three, and, if necessary, to four and five. A.R. at 195.

Upon remand, the ALJ found that although the medical evidence established that plaintiff suffered from severe ankle and mental impairments, he did not have an impairment or combination of impairments listed in, or medically equal to, one of the Commissioner's listed impairments. A.R. at 165. In concluding that the plaintiff failed to meet step three of the *Goodermote* test, the ALJ determined that plaintiff's subjective allega-

tions of pain were not credible, finding that plaintiff could not reasonably be expected to experience the severe disabling pain and loss of function which he alleged. A.R. at 165 (citing 20 C.F.R. § 416.945).

The ALJ also concluded that plaintiff retained the residual functional capacity to satisfy the physical *exertional* requirements for a full range of medium work. A.R. at 165 (citing C.F.R. § 416.945).[1] The ALJ further found that plaintiff possessed the residual functional capacity to perform the physical *non-exertional* requirements of work, except for moderate limitations in his ability to

(1) understand, remember, and carry out detailed instructions,

(2) maintain concentration and attention for extended periods, and

(3) perform at a consistent pace. A.R. at 165.

Therefore, having concluded that step three of the *Goodermote* test was not satisfied, the ALJ proceeded to step four. On this, he determined that plaintiff did not have any "past relevant work at the substantially gainful activity level." A.R. at 164. He therefore proceeded to the next step.

At step five the ALJ concluded that plaintiff was not disabled within the meaning of the Act because he could perform other work available in the national economy. A.R. at 166. Relying primarily on the testimony of a vocational expert and the Medical–Vocational Guidelines, the ALJ determined that plaintiff could make a vocational adjustment to perform jobs such as groundskeeper, nursery laborer or car wash attendant/vehicle cleaner. A.R. at 164, 166.

### D. *ISSUE ON APPEAL*

#### 1. *Onset Date and Hypothetical Questions*

The sole issue presented to the magistrate judge was whether the ALJ's decision was based on substantial evidence. In making the argument that it was not, plaintiff's counsel contended, and the magistrate judge

agreed, that the ALJ improperly rejected evidence regarding the onset date of plaintiff's disability, and posed misleading questions to the vocational expert. *See,* Report and Recommendation at 12–23.

■ Having reviewed the record independently, this court must agree with Magistrate Judge Neiman that the ALJ's decision regarding the onset date of plaintiff's disabling alcoholism lacks substantial supporting evidence. Indeed, *all* the significant evidence confirms that plaintiff was addicted to alcohol to the extent that he had lost the ability to control his drinking at least by November of 1983. In addition, the record establishes that by that date plaintiff's loss of self control had rendered him incapable of seeking any effective means of rehabilitation.

It is unnecessary to recapitulate the meticulous review of the record and applicable regulations contained in the magistrate judge's Report and Recommendation. The high points of the record include the fact that plaintiff was admitted to detoxification facilities three times from 1975 to 1986 and ordered to attend inpatient alcohol programs twice from 1985 to 1986—all without any long-term effect on his deeply entrenched alcohol addiction. Statements by doctors, by plaintiff's intimates and by the plaintiff himself confirm his heavy and uncontrollable daily drinking habits, well documented as far back as 1975, which by that year already caused daily vomiting. Because of his drinking he was never able to establish any significant work history, as the ALJ's decision concedes.

The hypothetical questions posed by the ALJ to the vocational expert omitted the unanimous evidence of uncontrollable alcoholism, simply positing moderate physical restrictions and limitations in memory and concentration. These questions did not fairly reflect the record. The questions posed by the plaintiff's attorney, on the other hand, accurately incorporated the facts demonstrating plaintiff's alcohol addiction and elicited the opinion by the expert that plaintiff

---

**1.** The ALJ determined that plaintiff had a residual functional capacity to perform physically exertional and non-exertional requirements of work

despite finding that plaintiff was unable to lift more than twenty-five pounds frequently or more than fifty pounds on occasion. A.R. at 165.

was unfit even for light or unskilled work as of November 1983.

For these reasons, well detailed in Judge Neiman's Report, the court must agree that the ALJ's decision lacked substantial support.

### 2. *Public Law 104–121.*

The much more serious issue in this case was never presented to the magistrate judge and has been raised by the defendant for the first time in its objections to his Report and Recommendation. This issue arises from recently promulgated legislation, Pub.L. 104–121, 110 Stat. 847 (1996), which restricts the ability of a claimant to receive benefits based upon chronic alcoholism.

A threshold question is whether the Government is permitted to raise this issue for the first time before the district court. It is well established in the First Circuit that

[p]arties must take before the magistrate "not only their 'best shot' but all of their shots".... This concept is premised on the same basis as the rule that an appellate court will not consider arguments not raised below except in the most compelling circumstances.

*Keating v. Secretary of Health and Human Services,* 848 F.2d 271, 273 (1st Cir.1988), citing *Borden v. Secretary of Health and Human Services,* 836 F.2d 4, 6 (1st Cir.1987).

Despite this general rule, the court will make an exception to address the newly raised issue in these circumstances. The motions were filed and fully briefed before the Magistrate judge prior to the statute's passage. While it is true that, ideally, an attorney might have noticed the enactment and quickly filed a supplemental objection prior to argument before the Magistrate Judge, the requirement of such Argus-eyed punctiliousness seems overly strict. More importantly, the issue of the statute raises a pure question of law with no need of fact-finding, imports no unfair prejudice to the plaintiff, and concerns a matter of significant public moment, approaching constitutional magnitude. *See, National Association of Social Workers v. Harwood,* 69 F.3d 622, 627 (1st Cir.1995) (setting forth factors to be con-

sidered in determining whether to address an unraised issue). For these reasons, the court will address the new issue.

■ The pertinent statute provides that:

an individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

P.L. No. 104–121 § 105(a)(1) (amending Title II of the Social Security Act). *See also* P.L. No. 104–121 § 105(b)(1) (amending Title XVI).

Since plaintiff's alcoholism is the heart of his disability claim, this statute would prohibit any award of benefits, if it applies. The critical question, then, is whether it applies.

In determining the timing of applicability, the statute divides persons suffering from alcohol or drug addiction into two groups. A person whose claim for benefits has been "finally adjudicated by the Commissioner" before the date of enactment of the new statute (March 28, 1996) will be entitled to receive benefits up to January 1, 1997 regardless of the statute. A person whose claim for benefits has *not* been finally adjudicated by the Commissioner on or before March 28, 1996, however, will *not* be entitled to receive benefits. *See* P.L. No. 104–121 § 105(a)(5)(A).

Thus, if plaintiff's claim in this case *was* "finally adjudicated by the Commissioner" before March 28, 1996, he would be entitled to receive his benefits up to January 1, 1997, despite the fact that he relies on his uncontrollable alcoholism as the basis for the claim. Since this plaintiff only seeks retroactive payment for the period November 1983 to February 1985, the effect of this construction would be that plaintiff would prevail. If on the other hand the court were to conclude that the plaintiff's claim was *not* "fully adjudicated by the Commissioner" as of March 28, 1996, the result would be the opposite.

Each side has a colorable argument. Plaintiff points to the undisputed fact that the *Commissioner's* final decision in this case was made long before March 28, 1996. Under the plain words of the statute, therefore,

plaintiff would be entitled to benefits up to January 1997. Alternatively, plaintiff argues that well established authority prescribing criteria for retroactivity favors his construction.

The Government argues that the use of the word "adjudicated" implies a time frame including final action by the district court. Thus, since this case was still pending before this district court after March 28, 1996, it had not been "finally adjudicated by the Commissioner" by that date.

The plaintiff has the stronger argument, for a number of reasons.

First, the word "final" is a deeply rooted term of art in the area of social security law. The "final decision" of the Commissioner uniformly means the decision of the Administrative Law Judge, or, where the Appeals Council takes jurisdiction, the decision of the Appeals Council. *See* 42 U.S.C. § 405(g) and 20 C.F.R. § 416.1484(a) and (d). The term "final" never refers to the decision of the district court on review. The insertion of the participle "adjudicated" next to the adverb "finally" does not deprive the notion of a "final" decision of its very well established import. Any possible argument that such a dramatic transformation has occurred is rebutted by the three words immediately following: "by the Commissioner." At the risk of drumming on the obvious, "finally adjudicated by the Commissioner" means "finally adjudicated *by the Commissioner.*" The defendant's argument simply ignores the last phrase of this provision.

Second, the defendant's lack of confidence in its own interpretation of Congressional intent is clearly evidenced by a bill, recently submitted to Congress by the defendant to "clarify" the statute and make it explicit that the earlier cut-off date applies to cases finally decided by the Commissioner but pending before a district court judge on appeal. If Congressional intent had been so manifest, such legislation—which the Senate has so far declined to pass—would not be necessary.

Third, the interpretation urged by the defendant would be unfair. Plaintiff filed his claim for benefits many years ago. His application has been plagued by misinterpreta-tion of statutes and outright error. The defendant's final, erroneous decision was made in 1995. Had the decision been correct, plaintiff would indisputably have received his benefits. The fact that the review process ran past March 1996 should not deprive plaintiff of benefits that a timely, correct decision would have given him.

Of course, ordinarily an interpretation of a law by the administrative agency charged with applying that law is entitled to deference. But where the agency interpretation flies in the face of the plain wording of the statute, and where the defendant's own actions reflect lack of assurance regarding Congressional intent, the usual deference is not appropriate.

Finally, decisional law, though still sparse, supports the conclusion that the phrase "finally adjudicated by the Commissioner" refers to the decision of the ALJ or Appeals Council. *See Newton v. Chater,* 92 F.3d 688, 696 at n. 3 (8th Cir.1996); *Cordova Torres v. Chater,* 1996 WL 460054 (E.D.Pa.). Contrary authority supporting the Commissioner, in the form of three recommendations by Magistrate Judges in California, Oklahoma and West Virginia is appended to defendant's reply memorandum.

## V. *CONCLUSION*

For the foregoing reasons this court adopts the magistrate judge's Report and Recommendation, and holds that there was no substantial evidence to support the Commissioner's decision to deny SSI benefits to plaintiff for the period claimed. Plaintiff's Motion to Reverse the Commissioner is hereby ALLOWED and defendant's Motion for an Order Affirming the Commissioner is DENIED.