Kenneth CONNOR, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security, Defendant.

No. 95–CV–1473 RWS.

United States District Court,
N.D. New York.

Dec. 9, 1996.

James S. Martin, Assistant Public Defender, Schenectady County, Schenectady, NY, for Plaintiff.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, NY (William H. Pease, Assistant U.S. Attorney, of counsel), for Defendant.

### MEMORANDUM–DECISION AND ORDER

RALPH W. SMITH, Jr., United States Magistrate Judge.

Upon consent of the parties, this matter was referred to the undersigned for all further proceedings and the entry of judgment by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. Briefs were filed by the parties,[1] and no oral argument was heard.

Plaintiff claims to be disabled as of September 15, 1990, due to alcohol and polysubstance abuse as well as a back impairment, having fallen twenty feet while painting a

---

1. The court notes that plaintiff's brief does not comply with General Order 43 given the absence of a summary of the medical evidence of record and the fact that plaintiff's arguments are not "divided into sections separately treating each issue and [it does not] set forth the contentions of plaintiff with respect to the issues presented and reasons therefor." Furthermore, in the future, counsel shall doublespace his briefs.

bridge in September 1986 and sustaining a herniated disc at L4–L5. His application for disability insurance benefits, which was filed on January 14, 1994, was denied at the initial and reconsideration levels of administrative review, as well as by an administrative law judge (hereinafter "ALJ") after a hearing. The Appeals Council then denied plaintiff's request for review.

Plaintiff now seeks a reversal and an annulment of the defendant's final decision and a remand for further proceedings. After a careful review of the submissions of the parties and the entire administrative record, the court has determined that the complaint should be dismissed.

The facts and the evidence of record will not be outlined further as they have been thoroughly summarized in defendant's brief. For the sake of further brevity, the court will also not recite the usual boilerplate language concerning the caselaw regarding the standard of review, the burden of proof, the sequential analysis to be followed, the "treating physician rule," and the analysis of subjective complaints as such language has been repeatedly stated in decisions by the various judges in this district, as well as in part in defendant's brief.

### ALLEGED BACK IMPAIRMENT

██ The ALJ found that medical evidence establishes that plaintiff "has a combination of a lumbar condition and a history of alcohol and drug abuse, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1" of defendant's regulations. (Rec. 17). With regard to the lumbar condition, the ALJ determined that "[t]hrough September 30, 1994,[2] [plaintiff] had occasional lumbar discomfort that did not preclude normal sitting, standing and walking during a work routine." (Rec. 17). Furthermore, the ALJ found that plaintiff had the residual functional capacity through September 30, 1994, "to perform the physical exertion and nonexertional requirements of work except for heavy and medium exertion, and skilled and semiskilled work on a sustained basis . . . ." (Rec. 17).

Thus, while plaintiff could not perform his past relevant work as an iron worker, the ALJ determined that there were a significant number of jobs available in the national economy which plaintiff could perform. Examples given, based upon testimony received by a vocational expert, were jobs as an electronic inspector and a cashier. (Rec. 18). Consequently, the ALJ concluded that plaintiff was not disabled and thus was not entitled to a period of disability and disability insurance benefits. (Rec. 18).

Plaintiff contends that the defendant's final decision is not supported by substantial evidence. The bulk of his argument focuses upon his substance abuse, which will be discussed further below. Plaintiff then asserts that "[f]urther complicating [his] ability to work was the severe and continuing impairment relating to his spine." (Pl.'s br. at 7). Nonetheless, he concedes that he has not been in treatment for this impairment since 1990. In any event, he contends that "a fair reading of Exhibit 9 would seem to indicate that there is little that can now be done to improve his condition. Surgical intervention will not be of any use and he has received whatever benefits that ongoing physical therapy can afford to him." (Pl.'s br. at 7–8). He claims he was not pain-free when discharged from physical therapy and contends his testimony concerning his subjective complaints is credible.

Furthermore, plaintiff asserts that the findings of consultative examiner William Rogers should not be given much weight, and were given undue weight by the ALJ, because unlike the treating doctor, Dr. Rogers is not a specialist, nor is he board certified. In addition, Dr. Rogers did not have either the myelogram or CT-scan available during his examination.

Defendant responds that although a CT-scan and a myelogram showed the presence of a herniated disc at L4–L5 (Rec. 101, 116), which would be capable of causing some pain, the totality of the evidence supports the ALJ's decision that plaintiff could perform light work activity. This court agrees.

---

**2.** That was the date plaintiff's disability insurance expired. Thus, to be entitled to disability insurance benefits, he would have to be found to have been "disabled" on or before that date.

Very significantly, as pointed out by defendant, plaintiff's treating physician, Dr. Stewart Kaufman, did not believe that plaintiff was disabled from all work activity, and the record contains no further treatment for plaintiff's back after June 1989. On December 22, 1988, Dr. Kaufman advised plaintiff to find work that did not require heavy labor. (Rec. 105). Thereafter, on March 16, 1989, the doctor reported that he did not believe that surgery would solve plaintiff's problem and that plaintiff remained "at least markedly disabled for his previous work...." (Rec. 105). Nonetheless, he advised consideration of testing and retraining. (Rec. 105). Finally, following plaintiff's last visit on June 22, 1989, Dr. Kaufman reported some **"mild restriction of motion ... some tenderness, no apparent neurologic deficits."** (Rec. 106) (emphasis added). Very significantly, while he opined that plaintiff was "permanently disabled for iron work," he recommended that plaintiff consider "a light type of work." (Rec. 106). These opinions clearly support the ALJ's determination, as do the doctor's objective findings, which are summarized in defendant's brief and need not be repeated here.

Furthermore, as also correctly noted by defendant, plaintiff's own statements about his activities belie his disability claim. In a Disability Report dated January 11, 1994, plaintiff stated that his doctor restricted just heavy lifting and strenuous exercises. (Rec. 86). In addition, plaintiff reported that he cooked, cleaned, did laundry, shopped, cleaned up after himself, fished, went to the library, read, did crossword puzzles, attended A.A. and N.A. meetings, visited relatives and friends, and rode the bus. (Rec. 86).

On another form completed later that month, he reported that he shopped with his girlfriend, cooked and washed dishes every day, took out the trash daily, swept and mopped the floor every other day, and did the laundry once a week. (Rec. 94). He also stated that he went to meetings five times a week and to the Alcohol Council two to three times per week, riding the bus every day. (Rec. 94–95). In addition, when asked about his last two jobs, he did not report his back condition as being one of the reasons for leaving. Rather, he was fired or quit due to being "very stressed out and I was late and missed alot [sic] of days due to drug and alcohol abuse" and he "couldn't cope with the hours and the stress created by the state inspector." (Rec. 95).

Furthermore, when seen by Dr. William Rogers on April 26, 1994, plaintiff complained of **"aches in the center of his lumbar spine on an intermittent basis,"** as well as "numbness in the left anterior thigh and left posterior calf upon awakening which then **quickly resolves."** (Rec. 274–75) (emphasis added). Plaintiff told the doctor he could sit for an hour, which he tolerated well, and walked extensively, **without back complaints.** (Rec. 275). His back bothered him the most while sleeping and upon awakening. (Rec. 275). The heaviest things he lifted were grocery bags. (Rec. 275).

Most recently, in a psychological evaluation completed in November 1994, it was reported that plaintiff "currently attends school and spends a good deal of time doing housework. He attends counseling and AA meetings. He plays with his 9 month old daughter and does some work around the house. He will also spend a good deal of time laying on the couch 'watching TV'.... [He] is able to cook and clean, but his girlfriend does the laundry and the shopping...." (Rec. 301).

While plaintiff testified during the administrative hearing that his daily activities were much more limited,[3] the ALJ properly considered plaintiff's subjective complaints (Rec.

---

3. Plaintiff notes that he testified that his daily activities were severely compromised. For example, he had trouble bending to tie his shoes, and any form of lifting or bending was difficult, including lifting his 16–pound daughter. He claimed that one of the reasons he lost his job as a bench welder in 1993 was the recurrent pain and stiffness in his spine, particularly upon arising from bed in the morning, which would often prevent him from going to work. (The other reason given for the job loss was his substance abuse.) While he acknowledges that a Daily Activity Report (Rec. 94–96) indicates that he can perform a wide-range of activities, he discounts this report by noting that at the hearing he specifically denied the ability to lift and carry groceries, do laundry, or engage in many of the activities which are a part of normal daily living. (Rec. 42–43).

15), and substantial evidence supports his disability determination. The ALJ stated:

It should be noticed that the claimant continued working through 1990 engaging in heavy exertion, although he has the lumbar condition and history of alcoholism and drug abuse since at least 1986. Furthermore, the medical records do not reveal any frequent, intense or prolonged lumbar pain radiating to the extremities on a sustained basis through September 30, 1994. Rather, the claimant had occasional lumbar discomfort that allow[ed] him to engage in light exertion.... The claimant indicated in the Disability Report that he could not engage in heavy lifting or strenuous exercise. However, he cooks, cleans, goes shopping and engages in other basic daily activities. He has recreational activities such as fishing and reading. He goes to Alcoholic Anonymous Meetings and has good social relations....

(Rec. 15).

The court also notes that several reports in the record regarding plaintiff's various admissions and treatment for drug and alcohol abuse contain information which supports defendant's determination concerning plaintiff's alleged back impairment. For example, a report completed on April 21, 1992, states regarding "MUSCULOSKELETAL SYSTEM—SPINE & EXTREMITIES," "Full ROM [range of motion] all joints. No back deformity." (Rec. 17). The final discharge note concerning that admission discussed plaintiff's general health but made no mention of any back complaints. (Rec. 181). Similarly, on July 2, 1992, in a Physical Examination and Assessment form, even when asked about plaintiff's musculoskeletal system, there was no indication of any back impairment or complaints. (Rec. 196, 198). Subsequently, in an intake form dated November 25, 1992, when asked to "[l]ist any current or past medical problems/conditions," plaintiff reported both a broken back and a left knee condition, both of which required physical therapy. Significantly, he indicated that both conditions were currently "Okay." (Rec. 237). In addition, he also stated on that form that during his free time, he enjoyed "bowling, hunting, fishing, crosswords,

reading, movies, hiking." (Rec. 238). Certainly, these activities support the ALJ's determination.

A report written the following year reported that "[m]ost leisure time is now spent going to the YMCA, bicycling and reading." (Rec. 257). In the Medical History portion of that report, it stated that plaintiff stated that he was "generally healthy. Current physical ailments include: cold symptoms and a toothache and current treatment is Actifed for cold symptoms and Motrin for tooth pain. Adverse effects of alcohol and/or drug use on physical health is injury due to car accident (left knee). **Past** problems or disabilities include: a back injury in 1986...." (Rec. 260) (emphasis added). Other documents in the record report similar information. *See,* e.g., Rec. 262 ("No medical problem."), 268, 271 ("Broken back in 1986, healed, with **occasional stiffness.**"), 299 ("The client drove his bicycle to the interview."), 300 (When plaintiff was asked if he felt capable of working, he did not mention his back impairment as an impediment. Rather, he mentioned stress and difficulty remaining sober.).

In sum, the court finds that there is substantial evidence of record to support the ALJ's determination that plaintiff's back impairment was not disabling and that plaintiff had the RFC for light work.

### PUBLIC LAW NO. 104–121

 Earlier this year, on March 29, 1996, the Contract With America Advancement Act of 1996 was enacted, which contains amendments to portions of the Social Security Act. Pub.L. No. 104–121, 110 Stat. 847 (1996) (hereinafter "the amendments"). Significant to today's decision is section 105, entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics" (hereinafter "the preclusion paragraph"), which provides in pertinent part: "[a]n individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub.L. No. 104–121 § 105(a)(1). Based upon the administrative record, there can be no question in this case that alcoholism and

drug addiction would be a contributing factor material to the disability determination. *See* 20 C.F.R. § 404.1535 ("How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").

The question remains, however, as to whether the recent amendments are to be applied retroactively to plaintiff's case. The amendments provide the following effective date for the preclusion paragraph:

> (A) The amendments made by paragraphs (1) and (4) shall apply to any individual who applies for, or whose claim is **finally adjudicated** by the Commissioner of Social Security with respect to, benefits under title II of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the case of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

Pub.L. No. 104–121 § 105(a)(5)(A) (emphasis added). Consequently, if plaintiff's claim was "finally adjudicated by the Commissioner" before March 29, 1996, he would be eligible for benefits up to January 1, 1997, due to his alcoholism and drug abuse. However, if his claim was not "finally adjudicated by the Commissioner" before March 29, 1996, he would be precluded from receiving benefits.

Plaintiff makes the conclusory argument that the amendments do not require that benefits be denied in this case. Without citing any authority, he contends that

> subsequent administrative promulgations from the Social Security Administration have indicated that claims which are in 'the pipeline' will continue to be adjudicated where alcohol and drugs are alleged to be a material factor contributing to disability. All claimants who allege that there [sic] disabling condition is caused in part by addiction to alcohol and drugs will then be afforded the ability to reapply for benefits

between the present time and January 1, 1997.

(Plaintiff's brief at 13). The court has been unable to locate any such "subsequent administrative promulgations."

However, after researching this issue on WestLaw, the court has ascertained that there is a split in the limited authority available as to whether the preclusion paragraph applies to disability cases pending in federal court on or after the time of enactment. After very careful consideration of this caselaw, the language of the amendments, the Commissioner's own interpretation of the amendments, and proposed clarifying legislation, the court concludes that the preclusion paragraph does apply in this case, and, therefore, plaintiff is ineligible for disability benefits based upon his alleged drug and alcohol addiction. *See Armstrong v. Chater,* No. CIV–95–1709–M, 1996 WL 467310, at *2 (W.D.Ok. June 20, 1996) (The court concluded "that the construction most consistent with the congressional intent embodied in the Amendments is that in referring to 'any individual ... whose claim is finally adjudicated by the Commissioner of Social Security with respect to [disability] benefits ... on or after the date of enactment' of P.L. No. 104–121, Congress included not only those individuals with denied claims pending at the various administrative levels of review but also those, such as the Plaintiff here, with denied claims pending appeal in the Federal courts."); *Sousa v. Chater,* No. CIV–S–95–0760–GGH, 1996 WL 651359 (E.D.Cal. Sept. 30, 1996). *But see Santos v. Chater,* 942 F.Supp. 57, 63–64 (D.Mass. Sept. 30, 1996) (and cases cited therein); *Willis v. Chater,* 939 F.Supp. 1236, 1240–41 (W.D.Va.1996); *Martin v. Chater,* 938 F.Supp. 347, 349 (W.D.Va.1996).

The term "final decision" of the Commissioner is used in the Social Security Act to refer to the ALJ's decision or that of the Appeals Council when it has taken jurisdiction. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 416.1455, 416.1481; *Santos,* 942 F.Supp. at 63. The court finds it significant that in the amendments Congress did not use the term "final decision" but rather used a different term, "finally adjudicated." [4] *Sousa,*

4. The regulations are also somewhat enlightening. With regard to the "[e]ffect of Appeals

1996 WL 651359, at \*14. "Therefore, the court may define 'finally adjudicated' with its ordinary meaning, and is not compelled to read the phrase with a judicial gloss layered on the phrase over the course of decades." *Id.*

Furthermore, in the instant case, plaintiff seeks a remand to the Commissioner for further proceedings. After a review of the administrative record, it appears that if the preclusion paragraph does not apply, a remand would be warranted for further consideration of plaintiff's substance abuse and his ability to control his drinking and drug usage. Where a remand for further proceedings is warranted, "the case has not been 'finally adjudicated,' i.e., there are decisions remaining to be made by the Commissioner. Employing the plain meaning of the words, the SSA/SSI amendments should be applied to this pending case—a case where the proper potential remedy is a remand to the Commissioner for further evaluation in the sequential analysis." *Sousa,* 1996 WL 651359, at \*14.

In addition, it is well established that the agency's interpretation of an ambiguous statute is entitled to great deference. Defendant states in her brief that "consistent with the statutory language as a whole, [she] has interpreted the amendments to preclude a finding of disability, and thus the payment of disability benefits under the [Social Security] Act, to any individual whose disability claim was not finally favorably adjudicated, either at the administrative level or, if appealed, by a federal court, prior to the enactment of Pub.L. No. 104–121 if drug addiction or alcoholism would be, but for the application of section 105(a)(1), a contributing factor material to a determination of disability." (Def.'s br. at 24). While defendant correctly acknowledges that "when the statute is read as a whole it becomes apparent that Congress did not expressly address how to categorize and treat cases pending in court at the time of enactment," it is asserted that "to assume

that Congress intended to categorize these cases with individuals who were already on the rolls, would be inconsistent with the statutory scheme. Such an assumption would undermine Congressional intent to continue benefits for a short transitional time only to individuals who already were receiving benefits when the statute was enacted and to preclude future awards of benefits based on drug addiction or alcoholism for anyone who was not already receiving benefits." (Def.'s br. at 26). This court agrees.

The court also notes that legislation has been proposed which would clarify the effective date of the amendments. The proposed "Social Security Miscellaneous Amendments Act of 1996" provides in relevant part:

SEC. 2. TECHNICAL AMENDMENTS RELATING TO DRUG ADDICTS AND ALCOHOLICS.

(a) CLARIFICATIONS RELATING TO THE EFFECTIVE DATE OF THE DENIAL OF DISABILITY BENEFITS TO DRUG ADDICTS AND ALCOHOLICS.—

(1) AMENDMENTS RELATING TO DISABILITY BENEFITS UNDER TITLE II.—Section 105(a)(5) of the Contract with America Advancement Act of 1996 (Public Law 104–122; 110 Stat. 853) is amended—

. . . . .

(B) by adding at the end the following new subparagraph:

"(D) For purposes of this paragraph, **an individual's claim,** with respect to benefits under title II of the Social Security Act based on disability, which has been denied in whole before the date of the enactment of this Act, **may not be considered to be finally adjudicated before such date if, on or after such date—**

---

Council's decision of review," the regulations provide:

> The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. **The Appeals Council's decision, or the decision of the [ALJ] if**

the request for review is denied, is *binding unless you or another party file an action in Federal district court,* or the decision is revised....

20 C.F.R. § 416.1481 (emphasis added).

"(i) there is pending a request for either administrative or **judicial review with respect to such claim,** or

"(ii) there is pending, with respect to such claim, a readjudication by the Commissioner of Social Security pursuant to relief in a class action or implementation by the Commissioner of a court remand order.".

H.R. 4039, 104th Cong., 2d Sess. (1996) (emphasis added). If passed, the clarifying amendment would be effective back to the time the preclusion paragraph was enacted.

According to one court, this clarifying legislation "was submitted because at least one court did not believe that the effective date applied to judicial proceedings." *Sousa,* 1996 WL 651359, at *15. Unlike the District of Massachusetts, this court does not interpret this proposed legislation as an expression of defendant's "lack of confidence in its own interpretation of Congressional intent." *Santos,* at 63.

## CONCLUSION

In sum, the court finds that plaintiff is precluded from being awarded disability insurance benefits based upon his alcohol and drug abuse problems.[5] Furthermore, as discussed above, substantial evidence supports defendant's conclusion regarding plaintiff's alleged back impairment. Consequently, defendant's final decision is hereby affirmed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that the complaint is dismissed. It is further

**ORDERED,** that the Clerk of the Court serve a copy of this decision upon the parties by regular mail.

**IT IS SO ORDERED.**

---

[5]. Based upon this conclusion, it is unnecessary to address plaintiff's arguments that the ALJ improperly relied upon the medical-vocational guidelines due to plaintiff's non-exertional impairment, namely, his substance abuse. Similarly, there is no need to discuss plaintiff's contentions regarding the vocational expert's answers to hypothetical questions which included plaintiff's addiction to alcohol and drugs. (Pl.'s br. at 10–11).