DIANE P. WOOD, Circuit Judge.
 

 Alfred Perkins is seeking disability insurance benefits on the ground that he has been disabled due to alcoholism, high blood pressure, heart trouble, and poor vision since at least December 2, 1987. He was ultimately unsuccessful in his efforts at the Social Security Administration, both initially and through his hearing before an administrative law judge and the Appeals Council. His suit for review of the administrative determinations, filed pursuant to 42 U.S.C. § 405(g), was similarly unsuccessful in the district court. Perkins now appeals to this court, claiming that the administrative decision to deny his application for benefits was not supported by substantial evidence, that the Appeals Council committed legal error in refusing to give plenary review to the ALJ’s decision, and that the ALJ erred in refusing to apply Social Security Ruling 83-20 to his ease. Having considered these issues and the other ancillary points Perkins raises, we find no error in the district court’s judgment and we therefore affirm.
 

 
 *-292
 
 I
 

 The critical background of this case is almost entirely procedural. On February 26, 1990, Perkins applied for Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act, claiming that he had been disabled by alcoholism since 1985. This application was denied both initially and on reconsideration. On July 12, 1990, he requested a hearing on the SSI application. He also filed the application at issue here for Disability Insurance Benefits (DIB), claiming as noted that he had been disabled due to alcoholism, high blood pressure, and various other problems since December 2,1987. Administrative Law Judge George A. Bowman, Jr., held a consolidated hearing on the SSI and DIB claims on December 13, 1990, at which Perkins appeared accompanied by counsel. On May 15, 1991, ALJ Bowman found that Perkins did not have a “severe” impairment on or before March 31, 1989, when his insured status expired, and thus he was not entitled to DIB. The ALJ also found that Perkins was “disabled” as of the date he filed for SSI. On Perkins’ petition for review, the Appeals Council vacated that decision and remanded to the ALJ for further consideration.
 

 Perkins had a second hearing before ALJ Bowman on October 16, 1992, at which he again appeared with his lawyer. A vocational expert testified this time, as well as Mr. Perkins himself. On November 16, 1992, ALJ Bowman issued an opinion finding that during all relevant periods, Perkins seldom had deficiencies in concentration, persistence, or pace, and that he thus retained residual functional capacity to perform within a limited range of light work. This meant that Perkins was not “disabled” on or before the date his insured status expired, and thus the ALJ reconfirmed his earlier finding that Perkins was not entitled to DIB. Applying the Medical-Vocational Guidelines to Perkins’ case, however, the ALJ found on remand that Pérkins was “disabled” as of his 55th birthday, January 9, 1991, but not before. The latter finding entitled Perkins to SSI benefits'beginning as of his 55th birthday. (As we note briefly below, the Senior Citizens’ Right to Work Act of 1996, P.L. 104-121, 110 Stat. 847 (1996), at the very least may cut off his right to continued SSI benefits after January 1, 1997, to the extent that his alcoholism was a contributing factor to his disability. § 105(a)(1), amending 42 U.S.C. § 423(d)(2). Questions relating to his SSI benefits are not involved in this appeal.)
 

 On December 28, 1992, Perkins asked the Appeals Council to review the November 16 decision. The Council gave him an opportunity to submit additional evidence or argument, and on April 14, 1993, he did so. His “new evidence” consisted of a review of the record and a Mental Residual Functional Capacities Assessment that psychologist Dr. William Reich had performed on March 19 at the request of Perkins’ attorney. Apparently without this new material in its possession, the Council denied review in an order dated April 27, 1993. Over a year later, it rectified its failure to consider Perkins’ additional filing, but it reaffirmed its decision not to grant the request for review. In a letter dated May 25, 1994, the Council informed Perkins that it had reviewed the entire record, including the new material, and had concluded that there was no basis to grant the request under either 20 C.F.R. § 404.970 (relating to review of DIB claims where “new and material evidence” is presented) or 20 C.F.R. § 416.1470 (same review of SSI claims). Discussing the new evidence specifically, the Appeals Council “decided that neither the contentions nor the additional evidence provides a basis for changing the decision.”
 

 Perkins filed his suit for review of the agency decision under § 405(g), limiting his claims to the denial of the disability benefits and the Appeals Council’s decision to deny review. The district court ordered the parties to file cross-motions for summary judgment, referred the case to Magistrate Judge Edward Bobrick, and on September 22,1995, adopted the Magistrate Judge’s February 16, 1995, Report and Recommendation that summary judgment be granted for the Commissioner. The district court wrote its own opinion on the issue relating to the Appeals Council’s denial of review, and wrote an additional brief opinion denying Perkins’ motion to reconsider.
 

 
 *-291
 
 II
 

 Initially, we address briefly the Commissioner’s argument that this case is moot as a result of the recently-enacted Senior Citizens’ Right To Work Act of 1996. Section 105(a)(1) of the Act, which amends 42 U.S.C. § 423(d)(2), states:
 

 An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner’s determination that the individual is disabled.
 

 42 U.S.C. § 423(d)(2)(C). The Act goes on to specify that the amendments:
 

 shall apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits -under title II of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the ease of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1,1997.
 

 42 U.S.C.A. § 405, note. The Commissioner argues here that the Act applies to Perkins’ case because it was pending on appeal as of the date of enactment. On this assumption, she argues that neither this court nor the agency on remand may base any finding of his entitlement to DIB on his alcoholism.
 

 Perkins’ claim for DIB did not rest solely on his alcoholism; he claimed also that he was disabled due to hypertension, back problems, chronic obstructive pulmonary disease, neurogenic bladder, and burning feet. Therefore, even under the Commissioner’s interpretation of the new legislation, if Perkins were entitled to a remand on the DIB claim it would be necessary to decide whether his 'alcoholism was a “contributing factor material to the Commissioner’s determination” that he was disabled. Most of the courts that have considered the issue thus far have concluded that the new legislation applies only to cases in which the Commissioner’s decision was final as of the date of enactment, following the plain language of § 105(a)(5)(A). See,
 
 e.g., Newton v. Chater,
 
 92 F.3d 688, 695-96 & n. 3 (8th Cir.1996);
 
 Santos v. Chater,
 
 942 F.Supp. 57, 63-64 (D.Mass.1996);
 
 Martin v. Chater,
 
 938 F.Supp. 347, 348 (W.D.Va.1996). But see
 
 Connor v. Chater,
 
 947 F.Supp. 56, 60 (N.D.N.Y.1996) (Commissioner’s decision not “final adjudication” if appeal is pending in federal courts);
 
 Armstrong v. Chater,
 
 949 F.Supp. 808, 810 (W.D.Okl.1996) (same). If finality at the Commissioner level is all that is required, an applicant like Perkins would be able to receive DIB benefits from his onset date up to January 1, 1997, even if alcoholism significantly contributed to his disability. If the word “Commissioner” we highlighted above really meant “Commissioner and all levels of judicial review,” then applicants like Perkins would immediately need to meet the new standards. Perkins appears to have the better argument from a plain language standpoint, but we need not resolve this issue today because we are affirming the decision to deny DIB benefits in any event. One way or the other, Perkins’ appeal presents a live controversy, to which we now turn.
 

 We consider first the procedural issue Perkins raises, namely, whether the Appeals Council erred when it refused to conduct a full-blown review of the ALJ’s decision. Its letter of May 25, 1994, reveals instead a sort of “quick look” review of the additional evidence from Dr. Reich and Perkins’ supplemental legal arguments. Perkins claims, in essence, that this was not an option for the Appeals Council under the governing regulation. Instead, he asserts, the Appeals Council either had to refuse altogether to look at the additional materials, or it had to give plenary appellate review with all the trappings. See 20 C.F.R. §§ 404.973-404.979 (1996) (providing procedures for full review by Appeals Council).
 

 The pertinent regulation for disability claims is, as the Council noted, 20 C.F.R. § 404.970(b), which provides as follows:
 

 If new and material evidence is submitted, the Appeals Council shall consider the
 
 *-290
 
 additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative judge hearing decision. It will then review the case if it finds that the administrative law judge’s action, findings, or conclusion is contrary to the weight of the evidence currently of record.
 

 Our review of the question whether the Council made an error of law in applying this regulation is
 
 de novo. See Eads v. Secretary of the Department of Health and Human Services,
 
 983 F.2d 815, 817 (7th Cir.1993). In the absence of any such error, however, the Council’s decision whether to review is discretionary and unreviewable. See
 
 Damato v. Sullivan,
 
 945 F.2d 982, 988 (7th Cir. 1992). In the latter ease, the ALJ’s decision becomes the final decision reviewed under § 405(g).
 

 Perkins’ principal argument is that the Appeals Council’s denial of a request for review (as opposed to a dismissal of a request for review) is subject to judicial review, whether or not the request involves additional evidence. He relies on
 
 Eads
 
 and related cases, and attempts to distinguish
 
 Damato
 
 as holding only that Appeals Council actions dismissing a request for review or refusing to reopen a prior decision are unreviewable. The Commissioner responds that Appeals Council review is “certiorari-type,” which means that a denial of Council review is not itself subject to further judicial review. Review is possible only if, as
 
 Eads
 
 and
 
 Nelson v. Bowen,
 
 855 F.2d 503, 505 (7th Cir.1988), held, the Appeals Council’s action rests on a mistake of law, such as a determination that the evidence submitted for the first time to the Appeals Council was not “new” or “material” within the meaning of the governing rules. See Social Security Administration, Office of Hearings and Appeals,
 
 Hearings, Appeals and Litigation Law Manual (HAL-LEX),
 
 I-3-306A.
 

 Here, much of this debate is beside the point. The Appeals Council did not refuse to consider Perkins’ additional materials. To the contrary, following the second sentence of § 404.970(b), it “evaluate[d] the entire record including the new and material evidence submitted” and concluded that “neither the contentions nor the additional evidence provide[d] a basis for changing the [earlier] decision.” Its letter devotes a paragraph to Dr. Reich’s review of the file and notes that Dr. Reich rated Perkins’ functioning as “not significantly limited in 14 areas and moderately limited in 6 areas, with no areas markedly limited.” Perkins seems to be arguing here that once the Council conceded that Perkins’ additional materials were “new and material,” it had no choice but to proceed to a full hearing. As is often the case, the regulation is not a model of clarity, but we have little trouble concluding that Perkins’ reading does not make sense.
 

 Under the regulation, once the Council has assured itself that the proffered new material relates to the appropriate time period, the first step it must take is to decide whether the submission is really “new” and “material.” If it is, the Council must proceed 'under the second sentence to evaluate the entire record including that new and material evidence. If it concludes as a result of that evaluation that the administrative law judge’s action appears to be contrary to the weight of the evidence “currently” of record — that is, the old evidence plus the new submissions — only then does it proceed to a full review of the case. Here, Perkins satisfied the first two steps: the evidence related to the proper time period and the Appeals Council treated it as new and material. He failed at step three: upon its consideration of the entire record, the Council concluded that there was nothing before it that undermined the ALJ’s earlier decision. It accordingly denied review. We see no error as a matter of law in this method of proceeding, and thus, under
 
 Damato,
 
 we will not review the Council's discretionary decision.
 

 Turning to the ALJ’s decision, Perkins next argues that the judge erred in refusing to apply Social Security Ruling 83-20 to Perkins’ situation. SSR 83-20 governs determinations of the onset of disability in Title II and XVI cases. The key parts of this rather lengthy ruling are as follows:
 

 
 *-289
 
 PURPOSE: To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations.
 

 INTRODUCTION: In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits....
 

 POLICY STATEMENT: The onset date of disability is the first day an individual is disabled.as defined in the Act and the regulations....
 

 A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)....
 

 Title XVI
 
 — Specific
 
 Onset Is Necessary
 

 There may be instances where it is necessary to establish that disability has existed for several consecutive months (possibly up to 12 months) immediately prior to the date of filing in order to assure that the severity/blindness requirements of the law are met.... This situation may occur where: ... (4) medical documentation pri- or to application date is relevant to an assessment of severity/duration in the impairment category involved, e.g., myocardial infarction, cirrhosis, certain mental conditions, or for some dual title II-XVI claims where an earlier onset must be established for the title II claim.
 

 Perkins claims that this ruling means that once the ALJ concluded that he was disabled for SSI (Title XVI) purposes as of his 55th birthday, he was obliged to determine whether (and when) any earlier onset date existed for DIB (Title II) purposes. See also
 
 Lichter v. Bowen,
 
 814 F.2d 430 (7th Cir.1987).
 

 The main problem with Perkins’ argument is that it does not directly respond to the actual ruling of the ALJ in this ease. Nor is the Commissioner’s argument that SSR 83-20 is inapplicable to this situation particularly helpful, at least to the extent that the Commissioner is arguing this as a matter of law rather than as applied to the facts here. SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled
 
 as of
 
 an application date, and the question arises whether the disability arose at an earlier time. In the particular case of dual Title II-XVI claims, the onset date for the Title II claim may be earlier than the date for the Title XVI claim. This is because one can collect SSI under Title XVI only as of the date of application, regardless of how long one may have suffered from a particular infirmity, 20 C.F.R. § 416.335, but one can collect DIB under Title II that covers up to 12 months of disability prior to the filing of a DIB application, provided that one had insured DIB status during that period of disability. See C.F.R. §§ 404.131, 404.315. Here, the. ALJ made a specific finding that the onset date for Perkins’ disability was January 9,1991— neither before nor later. To make matters even plainer, after a review of the evidence showing Perkins’ ability to perform a significant number of jobs requiring light work, the ALJ stated that the “grid” provided by the Medical-Vocational Guidelines “supported] finding the claimant not disabled before his 55th birthday. According to the Medical-Vocational [Gjuidelines, however, as of the claimant’s 55th birthday on January 9, 1991, he is disabled per Rule 202.06.”
 

 Looking at this another way, as the Commissioner argues, the ALJ found that the disabilities from which Perkins suffers were relatively constant. It was only when his age reached the level specified in the Medical-Vocational guidelines that he qualified as “disabled” for purposes of the Act. His disability, so understood, as of .January 9, 1991, was enough to entitle him to SSI benefits, but not to DIB benefits, for the simple reason that his insured status for DIB purposes expired almost two years earlier, on March 31, 1989. Thus, on these facts, nothing in SSR 83-90 required the ALJ to admit further evidence that might have shown an earlier onset date than the actual date he
 
 *-288
 
 specifically found for the onset of Perkins’ disability.
 

 Next, Perkins argues that the ALJ’s decision is not supported by substantial evidence. As he recognizes, few of these challenges succeed, for the simple reason that findings of the Commissioner, if they are supported by substantial evidence, are conclusive. See § 405(g);
 
 Richardson v. Perales,
 
 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971);
 
 Diaz v. Chater,
 
 55 F.3d 300, 305 (7th Cir.1995). We do not substitute our own judgment for that of the ALJ; we look only for “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.”
 
 Diaz,
 
 55 F.3d at 305.
 

 Applying that deferential standard, we agree with the district court that Perkins’ challenge must fail. The ALJ’s November 16, 1992, decision on remand from the Appeals Council carefully reviewed the evidence of Perkins’ residual functional capacity to perform a range of light work and concluded that some 450,000 jobs existed that he could do. The ALJ went through the proper five-step inquiry required in these cases, see 20 C.F.R. § 404.1520 (Title II DIB claims); 20 C.F.R. § 416.920 (Title XVI SSI claims), he took into account Perkins’ evidence that he suffered from severe hypertension and chronic alcoholism (as well as back problems and chronic obstructive pulmonary disease), and he acknowledged that Perkins could no longer perform his former work as a foundry electrician. Even so, and even taking into account alcoholism-related problems with concentration, the ALJ concluded that prior to his 55th birthday there were a significant number of jobs available and thus that Perkins was not entitled to disability benefits. It is not our part to reweigh the evidence, which taken as a whole adequately supports the ALJ’s decision.
 

 Finally, Perkins argues that the district court should have granted his request for a remand under sentence six of § 405(g), which requires a plaintiff to show that “there is new evidence which is material and that there is good cause for the failure to incoiporate such evidence into the record in a prior proceeding.” For sentence six purposes (as opposed to Appeals Council review, for example), “materiality” means that there is a “reasonable probability” that the Commissioner would have reached a different conclusion had the evidence been considered, and “new” means evidence “not in existence or available to the claimant at the time of the administrative proceeding.” See
 
 Sample v. Shalala,
 
 999 F.2d 1138, 1144 (7th Cir.1993) (quoting
 
 Sullivan v. Finkelstein,
 
 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990)).
 

 Even though Dr. Reich’s evaluations were technically not in existence at the time of the earlier hearing, he based his conclusions entirely on evidence that had long been available. Under
 
 Sample,
 
 this derivative evidence was thus also “available” at the time of the earlier proceeding and does not qualify under sentence six as “new.” Furthermore, even if we were to take the generous view of both “new” and “material” that the Appeals Council adopted, Perkins has not shown good cause for his failure to seek out and include Dr. Reich’s evaluations into the earlier record. The mere fact that Dr. Reich devoted a part of his report to a critique of the ALJ’s opinion, which obviously could not have been done before the opinion issued, does not amount to good cause; such a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the ease, which would seriously undermine the regularity of the administrative process. The district court correctly denied Perkins’ request for a sentence six remand.
 

 For the reasons stated, we hereby AffiRM the judgment of the district court.