Marcotte, Jr. v. SSA                    CV-96-308-M   09/30/97  P

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


<u>Robert Marcotte, Jr.</u>

    v.                                      Civil No. 96-308-M

<u>John J. Callahan, Commissioner</u>
<u>Social Security Administration</u>[1]


**O R D E R**


    Plaintiff Robert Marcotte appeals, pursuant to 42 U.S.C.A.
§ 405(g), the decision of the Commissioner denying him social
security benefits.  The Commissioner's decision follows a
previous remand of this case to consider whether Marcotte's
claimed mental impairment, with his physical impairments,
rendered him disabled from work.  For the reasons that follow,
the Commissioner's decision is again reversed and remanded.


**Background**

    Local Rule 9.1 requires parties in a social security case to
file a joint statement of material facts that includes "all facts

---

    [1]  The President appointed John J. Callahan as Acting
Commissioner of Social Security, effective March 1, 1997, to
succeed Shirley S. Chater.  Pursuant to Fed. R. Civ. P. 25(d)(1),
John J. Callahan is thus substituted for Shirley S. Chater as the
defendant in this action.

pertinent to the decision of the case and all significant procedural developments, and define[s] all medical terms." LR 9.1(b)(2). In this case, the claimant seeks benefits for the period from October 17, 1987, through December 1992. The parties' joint statement of material facts, however, does not include the period between 1980 and 1993. Instead, the parties state that they rely on their separate factual statements from their individual memoranda submitted in June 1994 in a previous appeal to this court.[2] The parties have not filed those memoranda in this case. In addition, their separate memoranda, even if they were available, would not fulfill the requirements of Local Rule 9.1, nor, apparently, would their factual statements be helpful.[3] Ordinarily, the parties' pleadings would be returned and they would be directed to comply with the requirements of the local rule. Because of the protracted history of this case, however, the court will instead primarily rely on the factual background provided in the previous decision,

---

[2] The Magistrate Judge recommended that the decision denying benefits be reversed and remanded in a report and recommendation dated July 14, 1994. The report and recommendation was approved on August 8, 1994.

[3] In his report and recommendation, the Magistrate Judge described the parties' factual statements in their memoranda as "an unintelligible and confused recitation of plaintiff's medical history, . . . those facts are largely irrelevant to the issue before the court."

augmented by the parties' present factual statement and the record.

Marcotte first applied for benefits in December 1987 based on a back injury. He did not appeal the unfavorable decision in February 1989 denying him benefits. Marcotte again applied for benefits in April 1992 alleging an inability to work beginning in 1987 due to a back condition. During the hearing before the Administrative Law Judge ("ALJ") on May 4, 1993, the testimony indicated that Marcotte had suffered from panic attacks since 1972, and as a result, the ALJ suspended the proceedings to allow Marcotte, who was represented by counsel, to submit evidence pertaining to a possible mental impairment. The hearing resumed on July 13, 1993. Little additional evidence or testimony of mental impairment was offered.

The ALJ ruled in 1993 that the 1989 negative decision barred Marcotte's application for the period between 1987 and 1989, and also determined that he was not disabled from work during the applicable period, February 1989 through December 1992, by either his physical or mental conditions. Marcotte appealed the decision arguing that the ALJ failed to properly assess his mental impairment and improperly limited the period of his claimed disability. The court found that the record was insufficient to determine whether Marcotte's mental impairment,

3

combined with his exertional limitation, was disabling during the applicable period. The court also ruled that Marcotte's claim for benefits based on mental impairment presented a new claim that was not barred by the previous denial, so that the applicable period began in October 1987. Accordingly, the Commissioner's decision was reversed, and the case was remanded to determine:

> 1) how work-related stress affects plaintiff's RFC in light of his panic attacks, 2) whether plaintiff's panic attacks preclude him from leaving his restrictive lifestyle and 3) the synergetic effect of alcohol and Ativan on plaintiff's RFC.

Marcotte v. Secretary of Health and Human Servs., No. 94-19-SD, Report and Recommendation at 15, (D.N.H. July 14, 1994), adopted (D.N.H. Aug. 8, 1994).

Upon remand, the ALJ obtained a copy of a consultative examination report by Dr. Edward G. Martin, a clinical psychologist, who met with Marcotte in May 1995 and had also treated him in 1985. Dr. Martin's report, prepared for the New Hampshire Vocational Rehabilitation Division, presented Marcotte's psychological profile developed through observation, interview, and a mental status examination during the May 1995 meeting. Dr. Martin noted Marcotte's anxiety and panic disorder (for which he took the anti-anxiety medication Ativan), his alcohol abuse, and his ongoing treatment at the White Mountain

4

Mental Health Clinic. He evaluated Marcotte's mental functioning on the Global Assessment of Functioning (GAF) scale as 45 for the six months preceding the May interview. A GAF score of 45 indicates serious symptoms or impairment in social or occupational functions.[4] Dr. Martin estimated that Marcotte had average intelligence and did not find that he was particularly anxious during the interview. Based on Marcotte's description of his life and symptoms, Dr. Martin concluded that Marcotte's twenty year history of panic attacks and agoraphobia combined with a "long-standing history" of alcohol abuse had caused him to be "nearly housebound" and that "[i]t is difficult to imagine him becoming employable."

At the request of Marcotte's attorney, Dr. Martin completed a mental impairment questionnaire in July 1995. He found that Marcotte's mental impairments caused a moderate restriction of

---

[4] Lower GAF scores signify more serious symptoms. Scores between 31 and 40 indicate "'major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work),'" scores between 41 and 50 indicate "'serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job),'" and scores between 51 and 60 indicate "'moderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers.'" Sousa v. Chater, 945 F. Supp. 1312, 1319 n.7, 1320 n.8, 1322 n.9 (E.D. Cal. 1996) (quoting Diagnostic and Statistical Manual of Mental Disorders, American Psychiatric Association, p.12 (3d ed. 1987)).

5

daily living activities, a marked limitation in social functioning, frequent deficiencies of concentration and work pace, and repeated episodes of deterioration in work settings that would cause him to withdraw from the work situation. In a letter to Marcotte's attorney, Dr. Martin explained that his 1995 evaluation of Marcotte was consistent with his diagnosis in 1985 of anxiety with panic attacks. He noted that while alcohol abuse was not addressed in 1985, he nevertheless found that alcohol abuse had been a serious problem "over the last few years" prior to 1995. He also noted that Marcotte's physician, Dr. Felgate, had prescribed the anti-anxiety medication, Ativan, prior to 1985 and that he continued to take the medication throughout the period. He gave his opinion that he would have made the same diagnosis between 1985 and 1995 that he made based on his evaluation in 1995 if the same information had been presented and if he used the criteria in the 1994 manual. He estimated that Marcotte's GAF range from 1987 to 1992 was between 45 and 60.

The administrative record includes medical records from White Mountain Mental Health and Developmental Services beginning on July 27, 1994, when Marcotte referred himself to the clinic because of his panic attacks and alcohol abuse. The notes indicate a diagnosis of panic disorder without agoraphobia, alcohol dependence, and a GAF score of 30 with the highest GAF

6

score of 50.  On January 27, 1995, Marcotte's therapist completed a mental impairment questionnaire in which she indicated that restriction of Marcotte's daily living activities was marked, his difficulties in social functioning were moderate, that he often experienced deficiencies in concentration, and that according to his report he had continual episodes of deterioration.

An administrative hearing, following remand, was held on September 12, 1995.  Marcotte testified about his panic attacks during the relevant period between October 1987 and December 1992.  He said that he was hospitalized in September 1987 because of a panic attack and said that he experienced panic attacks several times a month despite taking medication, Ativan, to control the attacks.  He said that he also used alcohol, a six-pack of beer or more each day, to control his anxiety and panic and that he had little contact with other people during the period as he spent most of his time at home fearing that a panic attack would occur if he left home.  He explained that being around people or being in a place where he knew he could not get away by himself was likely to trigger his panic attacks.  He did not receive counseling for his mental condition during the period because, he said, he did not need counseling since he was taking Ativan and using alcohol.  He also said that he could not afford counseling and his medical doctors did not recommend treatment.

7

He sought counseling again later to control his alcoholism. During the period, he treated with his medical doctor who continued to prescribe Ativan to control his anxiety and panic attacks and who noted Marcotte's chronic alcoholism.

The ALJ posed a hypothetical question about a worker with restricted light work ability at an unskilled or semiskilled level and then added a restriction limiting contact with the public. Even with the restriction, the vocational expert found that significant numbers of appropriate factory jobs were available in packaging, testing, grading, sorting, inspecting, and examining. In response to Marcotte's attorney's hypothetical question, which emphasized his psychological limitations, the vocational expert said that no jobs existed that he could perform.

In his decision dated March 26, 1996, the ALJ again found that Marcotte was able to do light work, except sitting or standing more than one hour at a time, walking for more than thirty minutes, or performing extremes of reaching or frequent bending. He found that Marcotte's mental impairment, an anxiety disorder, precluded jobs that required dealing with or waiting on the public but otherwise did not limit his work ability. The ALJ ruled out a substance abuse impairment based on Marcotte's use of alcohol.

8

The ALJ completed a psychiatric review technique form which guides an evaluation of mental impairment based on the mental disorders listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1, and which focused on § 12.06, "Anxiety Related Disorders." The ALJ indicated on the form that Marcotte had anxiety related disorders that included persistent irrational fear of a specific situation and recurrent severe panic attacks. However, he rated Marcotte's impairment in daily living as slight, in social functioning as moderate, and determined that Marcotte seldom experienced deficiency in concentration and only once or twice experienced episodes of deterioration. The ALJ also found that Marcotte's symptoms did not result in complete inability to function outside of his home. Thus, the ALJ found that Marcotte did not have the required levels of severity for a listed anxiety disorder impairment.

The ALJ concluded, based on Marcotte's residual functional capacity and the testimony of the vocational expert, that jobs existed that Marcotte could perform despite his exertional and nonexertional functional limitations and ruled that he was not disabled.

### Standard of Review

After a final determination by the Commissioner and upon request by a party, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  42 U.S.C.A. § 405(g).  The Commissioner's factual findings are conclusive if supported by substantial evidence.  Id.; Irlanda-Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); see also Rodriguez Pagan v. Secretary of H.H.S., 819 F.2d 1, 3 (1st Cir.1987).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence.  Ortiz, 955 F.2d at 769; Burgos Lopez v. Secretary of H.H.S., 747 F.2d 37, 40 (1st Cir. 1984).  The court will defer to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  Frustaglia v. Secretary of H.H.S., 829 F.2d 192, 195 (1st Cir. 1987).  Accordingly, the Commissioner's decision to deny benefits will be affirmed unless

10

it is based on a legal or factual error.  Manso-Pizarro v. Secretary of H.H.S., 76 F.3d 15, 16 (1st Cir. 1996).

## Discussion

On appeal, Marcotte challenges the ALJ's determination, made at the fifth step of the sequential analysis, that he was not disabled during the relevant period.[5]  At the fifth step, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, he retains the residual functional capacity to do work other than his prior work, and that work the claimant can do exists in significant numbers in the national and regional economies.  20 C.F.R. § 404.1520(f); Keating v. Secretary of H.H.S., 848 F.2d 271, 276 (1st Cir. 1988).

Marcotte contends that the ALJ erroneously discounted Dr. Martin's retrospective opinion of his disability during the

---

[5]  The ALJ is required to consider the following five steps when determining if a claimant is disabled:
>    (1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
>    (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
>    (3) whether the impairment meets or equals a listed impairment;
>    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
>    (5) whether the impairment prevents or prevented the claimant from doing any other work.
20 C.F.R. § 404.1520 (1995).

11

period between 1987 and 1992 and determined that his mental condition was not a significant impairment.[6]  In doing so, he argues, the ALJ impermissibly substituted his own opinion for Dr. Martin's opinion and diagnosis.  The disputed question in this case, therefore, is whether substantial evidence exists in the record to support the ALJ's determination that Marcotte was not disabled, notwithstanding Dr. Martin's opinion and retrospective diagnosis of the severity of his psychological impairment.

## A.   Retrospective Diagnosis of Disability

Dr. Martin's 1995 opinion and diagnosis were based on Marcotte's narrative report during their meeting in May 1995 of his condition from October 1987 through 1992, and a comparison of Martin's treatment diagnosis in 1985 with his evaluation in 1995. He concluded that Marcotte suffered panic attacks and anxiety during the period to a degree that would have "impact[ed] on his ability to work efficiently and consistently."  Dr. Martin "hypothesized" a GAF score for the relevant period between 45 and 60 (which indicates a moderate to serious impairment) while

---

[6]  Marcotte also seems to suggest that having sought Dr. Martin's opinion, as directed by the court's order, the ALJ was obligated to accept his opinion or obtain another consultative examination.  Given the lack of contemporaneous evidence in this record, it does not appear that additional opinions, from psychologists who would have had less or no previous contact with Marcotte, would have been any more credible.

noting that he did not have some of the necessary information to make the assessment.

The ALJ did not credit Dr. Martin's diagnosis that Marcotte was disabled by his anxiety and panic attacks, and the effects of his treatment,[7] during the relevant period between 1987 and 1992 and made specific findings in support of his decision.  First, the ALJ noted that Marcotte had received no psychological treatment or assessment during the period.  Second, the ALJ found no evidence during the period that alcohol abuse limited Marcotte's work activities.  Third, Marcotte had not claimed anxiety as a disabling disorder in his applications for benefits.  Fourth, Dr. Martin's 1995 evaluation was based entirely on Marcotte's own report of his symptoms during the period and was contradicted by his own observations of Marcotte's appearance and

_____

[7] The court, on remand, directed determination of "the synergetic effect of alcohol and Ativan on plaintiff's RFC." Although alcohol use can no longer be considered as a contributing factor to disability, see 42 U.S.C.A. § 423(d)(2)(C), it is likely that the restriction, added by amendment effective March 29, 1996, does not apply in this case where the last final decision of the Commissioner was issued on March 26, 1996, see, e.g.,Perkins v. Chater, 107 F.3d 1290, 1293 (7th Cir. 1997); Newton v. Chater, 92 F.3d 688, 69-96 (8th Cir. 1996); Santos v. Chater, 942 F. Supp. 57, 63-64 (D. Mass. 1996). There appears, however, to be no evidence in the record pertaining to the combined effect of alcohol abuse and Ativan. Since Marcotte has had two separate opportunities to augment the factual record in support of his claim for benefits, it seems that evidence of side effects or synergetic effects is simply unavailable and that further remand for additional evidence would be futile.

manner during the interview.  Fifth, Dr. Martin disclaimed his ability to assess Marcotte's functioning during the applicable period.

Retrospective diagnoses (medical opinions of claimants' impairments which relate back to the covered period) may be considered only to the extent that such opinions both substantiate a disability that existed during the eligible period and are corroborated by evidence contemporaneous with the eligible period.  See Evangelista v. Secretary of H.H.S., 826 F.2d 136, 140 (1st Cir. 1987); see also, e.g., Likes v. Callahan, 112 F.3d 189, 190-91 (5th Cir. 1997); Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996); Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996); Jones v. Chater, 65 F.3d 102, 103-04 (8th Cir. 1995); Flaten v. Secretary of H.H.S., 44 F.3d 1453, 1457-62 (9th Cir. 1995).  A psychologist's professional opinion is weighed based on the type of evaluation, the treatment relationship, evidentiary support for the opinion, the opinion's consistency with the record, and his specialization.  20 C.F.R. § 404.1527(d). Because the Commissioner is responsible for making the decision as to whether a claimant is disabled based on the evidence in the record, an opinion that a claimant is disabled or unable to work or that his impairments meet or equal the requirements of a

14

listed impairment is not entitled to any particular significance. § 404.1527(e).

The record substantiates that Marcotte suffered from anxiety and panic attacks both before and after the applicable period and that his symptoms were alleviated, at least to some extent, by the prescribed medication, Atavin, and his consumption of alcohol. Dr. Martin was Marcotte's treating psychologist for only a few months in 1985[8] and had not treated Marcotte for ten years when he made his evaluation, based on an interview, in May 1995. Because Marcotte was not treated for his anxiety during the applicable period, other than by his medical doctor's prescription of Ativan, no clinical evidence from the period supports Dr. Martin's opinion of the severity of Marcotte's impairment. Thus, Dr. Martin had neither the benefit of a professional continuous longitudinal picture of Marcotte's condition, nor supporting contemporaneous clinical evidence for his diagnosis in 1995. In addition, as the ALJ noted, Dr. Martin acknowledged the difficulty in 1995 of making a diagnosis of Marcotte's condition during the applicable period and stated that he lacked some necessary information to make a GAF assessment.

---

[8] Dr. Martin's treatment notes from 1985 do not seem to be included in the record.

15

Other evidence in the record is inconsistent with Dr. Martin's retrospective diagnosis and assessment of the severity of Marcotte's mental impairment. At the hearing before the ALJ in May 1993, Marcotte testified that he left his employment in 1987 because of his back condition although he also explained that the panic attack, which occurred at one of his two jobs, kept him from returning to that particular employer. Shortly thereafter, Marcotte applied for job rehabilitation. In one rehabilitation program, he attended four days of evaluation and considered accepting an opportunity to be trained as an EEG technician at an out-of-state school but turned it down because of the hardship relocation would impose on him and his wife. In 1988, he again sought work through vocational rehabilitation, and attended interviews and meetings, but turned down their job referrals because they were too physically demanding. Marcotte did not indicate in his testimony that he experienced any particular anxiety during that time or that his anxiety disorder interfered with his efforts at vocational rehabilitation. The ALJ also noted that he observed Marcotte at the May and July 1993 hearings, both within a year of the applicable period, and found no cognitive deficit or functional inability sufficient to constitute a disability.

Marcotte testified at the September 1995 hearing that he was then more withdrawn than he had been in 1992, suggesting that his symptoms had worsened since the relevant period. He also explained that his medication had been increased within a year of the hearing. Even at the increased dosage level, Marcotte described only minimal side effects from Ativan saying that he had no physical effects and that he might get drowsy.

In May 1993, Dr. Bishop summarized Marcotte's "health problems" during the applicable period as "chronic alcoholism," "squamous cell carcinoma of the lip and nare in 1989," and "anxiety probably related to his alcoholism." Dr. Bishop's notes do not indicate impairment in functioning or the severity of impairment suggested by Dr. Martin's retrospective diagnosis. While Dr. Bishop noted Marcotte's excessive alcohol use, he did not comment in his office notes on any potential interaction of Ativan with alcohol abuse.

While the record confirms that Marcotte continued to experience anxiety and take medication during the applicable period, no contemporaneous medical evidence exists in the record pertaining to the severity of Marcotte's impairment during the period. In addition, substantial evidence exists in the record supporting the ALJ's reasons for discounting Dr. Martin's retrospective diagnosis and for not crediting Marcotte's

17

testimony that he was unable to work because of his anxiety disorder during the period.[9]  For those reasons, the ALJ appropriately discounted Dr. Martin's opinion and diagnosis. See, e.g., Grebenick v. Chater, No. 96-3032, 1997 WL 437266 (8th Cir. Aug. 6, 1997).

## B.  Substantial Evidence in Support of ALJ's Determination

The ALJ found that Marcotte's anxiety disorder caused him to experience a "persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation," and "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension . . . occurring on the average of at least once a week."  He also found that although the disorder was "severe," it caused only minimal to moderate effects in Marcotte's ability to function that were not sufficient to meet the requirements of a listed anxiety disorder.  The ALJ concluded that Marcotte's anxiety disorder would prevent him from performing jobs that required dealing with the public, but would not otherwise limit his job function.  Thus, in essence, the ALJ

_____

[9]  The ALJ considered Marcotte's reported activities and medical evidence as well as his own observations during three hearings in making his credibility determination.  See Avery v. Secretary of H.H.S., 797 F.2d 19 (1st Cir. 1986).

18

concluded that if Marcotte's employment did not require contact with the public, he would not experience anxiety attacks that would impair his ability to work.

Although substantial evidence exists in the record to support the ALJ's finding as to the frequency of Marcotte's anxiety attacks, it is lacking with respect to the disability determination. Marcotte told Dr. Martin in 1995 that over the time he had been experiencing anxiety attacks, minor attacks occurred every few days but that every once in a while he had a "big one." Notes from White Mountain Mental Health in 1994 state that he reported then that he tended to have one major attack a month and minor attacks about once a week despite staying at home to avoid unfamiliar people and situations. The record does not establish, however, what triggers the attacks, whether merely avoiding contact with the public would avoid more frequent or severe attacks in a work setting, or whether he could work despite the frequency and type of anxiety he experienced even when he did avoid the public.

The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 ("the Grid") as a "framework" in deciding that a significant number of jobs existed that Marcotte could do despite his limitations. The Grid is an appropriate shortcut at the fifth step only if a nonexertional

impairment, such as a psychological disorder, does not significantly affect the claimant's range of work ability. See Ortiz v. Secretary of Health and Human Servs., 890 F.2d 520, 524 (1st Cir.1989). The ALJ found that Marcotte's anxiety disorder limited his ability to perform the full range of light work because he would need to avoid jobs dealing with the public, and the vocational expert testified that a limitation in dealing with the public would restrict the jobs available. Thus, the Grid was not an appropriate basis for determining that Marcotte was not disabled. See Ortiz, 890 F.2d at 524; Gagnon v. Secretary of Health and Human Servs., 666 F.2d 662, 665 n.6 (1st Cir. 1981).

A vocational expert's opinion may serve as significant evidence, but only if her opinion was elicited with an accurate hypothetical based on significant record evidence. See Arocho v. Secretary of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). The hypothetical posed by the ALJ to the vocational expert included a limitation that Marcotte avoid the public but did not explain that Marcotte would experience one "big" anxiety attack per month and "small" anxiety attacks at least once a week. Thus, without the specific limitation that the ALJ found, the vocational expert's opinion cannot serve as substantial evidence in support of the ALJ's determination.

Marcotte's attorney's hypothetical, by his own description, emphasized Marcotte's psychological impairments. He described a claimant with a "frequency of panic attacks that would result in him being absent from work at least three times a month and that he would have difficulty working at a regular job on a sustained basis . . . and frequently secludes himself in his home." The vocational expert responded that such a claimant would not be able to do the jobs she had identified. Record evidence from the period of 1987 through 1992 does not support the severity of impairment suggested by the attorney's hypothetical. Thus, the attorney's hypothetical also did not elicit an opinion that can serve as substantial evidence.

Because substantial evidence does not exist in the record to support the ALJ's determination, the Commissioner's decision that Marcotte was not disabled must be reversed. The case must be remanded to determine whether or not jobs existed in the relevant economies that Marcotte could perform despite his physical and mental impairments during the period between 1987 and 1992 as found by the ALJ.

## Conclusion

For the foregoing reasons, the defendant's motion to affirm the decision of the Commissioner (document no. 8) is denied; the

21

plaintiff's motion to reverse (document no. 7) is granted, and the case is remanded for further administrative proceedings consistent with this order.  The clerk of court shall enter judgment.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 30, 1997

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.