Rouleau v. Apfel, SSA                    CV-98-589-JD  01/28/00
            UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Joseph Paul Rouleau

     v.                              Civil No. 98-589-JD
                                     Opinion No. 2000 DNH 024
Kenneth S. Apfel,
Commissioner of Social Security


                            O R D E R


     Pursuant to 42 U.S.C. § 405(g), Joseph Paul Rouleau moves to

reverse the decision of the Commissioner denying him social

security disability benefits (document no. 14).  The

Administrative Law Judge ("ALJ") found that Rouleau had a severe

impairment, a seizure disorder, within his eligibility period,

but that because he was able to perform some jobs at the light

exertional level, he was not disabled as defined in the Social

Security Act.  The Commissioner moves to affirm (document no.

16).



                            Background

I.   Procedural History

     Rouleau's eligibility period for disability insurance

benefits began on January 2, 1989, and ended on June 30, 1994.

On January 9, 1996, Rouleau applied for disability benefits based

on alleged impairments of post-traumatic stress disorder (PTSD),

chronic back pain, seizures caused by head injury, memory lapses, and sleep disorders.  His claim was denied initially and on reconsideration.  An administrative hearing was held on July 9, 1997, where Rouleau and a vocational expert presented testimony. The ALJ issued an order denying benefits on August 15, 1997.

II.  Facts[1]

Rouleau underwent cranial surgery in 1969 after receiving a shrapnel wound.  In 1989, Rouleau received treatment for a chronic cranial plate infection.  A physical examination revealed otherwise normal findings.  In 1990, Rouleau consulted a neurologist about seizures and headaches.  His speech and language were normal and there was no clear weakness in motion. The neurologist diagnosed Rouleau with a seizure disorder under poor control, based on Rouleau's complaints of his condition. The neurologist also noted that Rouleau's levels of Dilantin were sub-therapeutic.

In late 1991 and early 1992, Rouleau complained of back and leg pain and vision problems, and began physical therapy.  In May of 1992, x-rays showed mild spondylolisthesis (displacement of vertebra) and a CT scan revealed a mild bulging disc margin and

_____

[1]The factual information is taken from the parties' joint statement of material facts.

2

degenerative changes in the sacroiliac joint. The medical records note that Rouleau reported practicing karate. Rouleau continued to complain of back and groin pain through the summer of 1992.

In September of 1992, Rouleau consulted a physician for back and groin pain he experienced while performing karate. His lumbar motion and straight leg raising was normal. Muscle groups and sensation were also normal. Rouleau was diagnosed with nerve root syndrome due to foraminal stenosis and was advised that he could continue with karate as long as he did not use strong force or feel increased pain.

In January of 1993, Rouleau underwent an electro-encephalogram that revealed no brain abnormality. His condition was noted as "much improved." Rouleau's limitations on motion, including back motion, were described as mild.

A state medical consultant reviewed Rouleau's medical records in 1996 in connection with this application for disability benefits. The consultant reported his medical conclusions and determined that Rouleau suffered from severe impairments but could lift and/or carry 10 pounds frequently and 20 pounds occasionally. The consultant also recommended that Rouleau avoid working around machinery or at heights. The consultant did not identify any other functional limitations.

Another state physician reviewed these findings and concurred with them.[2]

## Standard of Review

Federal law empowers the court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West Supp. 1999). The court must uphold a denial of social security disability benefits unless the Commissioner's decision is based on legal or factual error. See Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. See id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). The court must uphold the Commissioner's decision,

---

[2]Although additional later medical records are summarized in the joint statement of facts, those records are not pertinent to Rouleau's application as they pertain to his condition more than one year after his covered period expired and do not include retrospective diagnoses relevant to his condition on or before June 30, 1994. See 42 U.S.C.A. § 423(d)(1)(A); see, e.g., Marcotte v. Callahan, 992 F. Supp. 485, 491 (D.N.H. 1997).

4

"even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Secretary of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).

## Discussion

Under the Social Security Act, one form of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.A. § 423(d)(1)(A) (West Supp. 1999).  An individual is found to be under a disability only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C.A. § 423(d)(2)(A) (West Supp. 1999).

The ALJ is required to follow a sequential evaluation process when determining if a claimant is disabled.  See 20 C.F.R. § 404.1520 (1997).  The ALJ must determine (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments which significantly limit his physical or mental

5

capacity to perform basic work-related functions; (3) whether the impairment(s) are equivalent to a specific listed impairment; (4) whether the claimant's impairment(s) prevent him from performing work of the sort he has done in the past; (5) whether the impairment(s) prevent the claimant from doing other work, given the claimant's age, education, past work experience and residual functioning capacity.  See 20 C.F.R. § 404.1520 (1997).  At the fifth step of this process, the Commissioner bears the burden of showing that there are jobs in the economy that the claimant can perform.  See Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

In this case, the ALJ found that Rouleau suffered from a severe impairment, a seizure disorder with migraine headaches and impaired memory, that was not equivalent to a listed impairment.[3] He found that Rouleau was unable to perform the type of work he performed prior to his impairment, but that he could perform certain unskilled light duty jobs.  Rouleau argues that the court should reverse the ALJ's order because the ALJ erred at the fifth step in two ways.  First, the ALJ posed an improper hypothetical question to the vocational expert.  Second, the ALJ erred in

---

[3]The ALJ found that Rouleau did not suffer from a severe impairment due to back pain, vision problems, or post-traumatic stress disorder.

6

finding Rouleau not fully credible, and therefore gave insufficient weight to Rouleau's subjective complaints.

I.   Hypothetical to Vocational Expert

"A vocational expert's opinion may serve as significant evidence, but only if her opinion was elicited with an accurate hypothetical based on significant record evidence." Marcotte v. Callahan, 992 F. Supp. 485, 493 (D.N.H. 1997) (citing Arocho v. Secretary of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)). The hypothetical cannot omit a significant functional limitation. See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994). Rouleau argues that the ALJ erred by posing a hypothetical that presumed he could perform light duty work.[4] Rouleau claims that

_____

[4]The ALJ posed two hypothetical questions to the vocational expert. In the first one, after noting Rouleau's age and work history, he added:

> I'm going to assume for the purpose of framing my question that the claimant has the exertional ability to engage in light work, that is I'm going to assume he can lift 20 lbs., 10 lbs. occasionally. He can stand for up to six hours in an eight-hour day and sit for up to two hours in an eight-hour day . . . [a]lternating both of those, sitting and standing. Imposed on that are certain limitations. I'm going to assume that he has limitations from seizure disorder which prevent him from working around machinery, working at heights, working with vibratory tools.

7

the ALJ improperly based this presumption on the opinion of a state agency medical consultant who did not examine him, and that the ALJ ignored Rouleau's own testimony about his loss of memory and concentration.

A non-examining physician's assessment of a claimant's exertional impairments can constitute substantial evidence to support a determination of functional ability. See <u>Berrios Lopez v. Secretary of Health & Human Servs.</u>, 951 F.2d 427, 431-32 (1st

---

(R. at 66-67.)  The expert testified that such a claimant would be able to perform certain unskilled light duty jobs.  The ALJ then posed a second hypothetical:

> Now, assume the same vocational factors and the same functional limitations identified previously, and the functional limitations were the limitations imposed on a person that would have a seizure disorder.  I want you to assume further that based on the testified memory impairment and confusion and the forgetfulness . . . that Mr. Rouleau is unable to engage in complex tasks, that he is unable to meet high productivity goals, that he cannot work at an intense pace, and that he might require supervision for up to one-third of a day, that contact with the public should be infrequent and occasional.  Considering the vocational factors, and by that I mean the age, the education and the past work experience, and the functional limitations now, can such an individual perform any of the . . . jobs that you identified in my previous question.

(R. at 68-69.)  The expert replied that Rouleau could still perform some of the light duty jobs previously identified.

8

Cir. 1991). The non-examining physician's written medical conclusions in this case indicate that he took some care to review Rouleau's medical files. Rouleau has not suggested that the physician lacked access to any significant medical records when he wrote his opinion. The joint statement of facts does not mention, and Rouleau does not point to, any medical opinions that directly contradict, in functional terms, the non-examining physician's assessment of Rouleau's exertional impairments. See id. at 430. Neither does Rouleau point to objective medical evidence that contradicts the non-examining physician's assessment. Therefore, the ALJ was entitled to rely on the non-examining physician's assessment to support his conclusion that Rouleau could perform light work. Accordingly, the ALJ properly included the ability to do light work in the hypothetical posed to the vocational expert.

Rouleau also claims that the ALJ ignored his testimony about the limitations on his ability to remember and concentrate. However, the ALJ specifically instructed the vocational expert to consider this limitation in his second hypothetical. Therefore, Rouleau has not identified any error on the ALJ's part. The court finds that the vocational expert's testimony constituted substantial evidence upon which the ALJ was entitled to rely.

9

II.  Credibility Determination

Rouleau also contends that the ALJ erred by finding Rouleau's testimony about his condition and his ability to work only partially credible.  It is the ALJ's responsibility "to determine issues of credibility and to draw inferences from the record evidence."  Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The ALJ's credibility determination is entitled to deference, "especially when supported by specific findings."  Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

When determining a claimant's residual functional capacity, the ALJ must consider the claimant's own description of his physical limitations, including his subjective complaints of pain, as well as the relevant medical evidence.  See 20 C.F.R. § 404.1529 (1997).  The ALJ must evaluate the claimant's subjective complaints of symptoms by considering, among other factors, the medication available to treat the condition and the claimant's daily activities.  See id.; Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).

In his opinion, the ALJ noted that Rouleau was prescribed Dilantin to treat his seizure disorder and that prior to June 30, 1994, the Dilantin levels in Rouleau's body were sub-therapeutic, indicating that Rouleau was not fully compliant with his

11

prescribed course of treatment.  Rouleau does not dispute that his medication levels were sub-therapeutic.  The ALJ also noted that Rouleau reported no side effects from prescribed medications, and that the single electroencephalogram conducted in January of 1993 reported normal results.  Rouleau does not dispute these facts either.  As for Rouleau's daily activities, the ALJ wrote that "[w]hile the claimant testified that his current daily activities are somewhat limited, he had earlier reported that he was able to fish, hunt and ride his motorcycle. He went to town for coffee, cooked, cleaned, helped his wife shop and played cards and bingo."  (R. at 15.)  The record shows that Rouleau did report these daily activities, and Rouleau does not now challenge the accuracy or relevance of these reports.[5]

The ALJ's opinion indicates that he considered the factors relevant to Rouleau's subjective complaints, as well as the objective medical evidence and reports from Rouleau's treating physicians.  The ALJ made specific findings from which he concluded that Rouleau's testimony was partially credible.  The court will not disturb the ALJ's credibility determination.

---

[5]See Ex. 4, Activities of Daily Living (Nov. 16, 1994); Ex. 13, Activities of Daily Living (Jan. 21, 1996).

<u>Conclusion</u>

For the foregoing reasons, Rouleau's motion to reverse the decision of the Commissioner is denied (document no. 14). The Commissioner's motion to affirm is granted (document no. 16). The clerk of the court shall close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

January 28, 2000

cc:  Thomas F. McCue, Esquire
     David L. Broderick, Esquire

13