Lewis v. SSA                          CV-99-578-JD  08/09/00
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Deborah J. Lewis

     v.                              Civil No. 99-578-JD
                                     Opinion No. 2000 DNH 177
Kenneth S. Apfel, Commissioner,
Social Security Administration


                            O R D E R


     The plaintiff, Deborah J. Lewis, brings this action pursuant

to 42 U.S.C.A. § 405(g), seeking review of the decision of the

Commissioner denying her claim for Title II social security

benefits.  The Commissioner found that she was not disabled at

the fifth step of the sequential evaluation process.[1]  She

challenges the Commissioner's decision on the grounds that the

Administrative Law Judge ("ALJ") failed to find that she met or

_____

     [1]  The ALJ is required to make the following five inquiries
when determining if a claimant is disabled:

     (1) whether the claimant is engaged in substantial
     gainful activity;
     (2) whether the claimant has a severe impairment;
     (3) whether the impairment meets or equals a listed
     impairment;
     (4) whether the impairment prevents the claimant from
     performing past relevant work; and
     (5) whether the impairment prevents the claimant from
     doing any other work.

See 20 C.F.R. § 404.1520.

equaled a listed impairment and failed to call a vocational expert to assess the effect of her limitation in stooping on the available occupational base.  The Commissioner moves to have the decision affirmed.

<u>Standard of Review</u>

The court must uphold a final decision of the Commissioner denying benefits unless the decision is based on legal or factual error.  <u>See</u> <u>Manso-Pizarro v. Secretary of Health and Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (citing <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885 (1989)).  The Commissioner's factual findings are conclusive if based on substantial evidence in the record.  <u>See</u> 42 U.S.C.A. §§ 405(g), § 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quotation omitted).  The Commissioner's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999).[2]  In making the disability determination, "[i]t is

_____

[2]Because the regulations implementing the disability standard for social security insurance benefits, Title II, 42 U.S.C.A. § 423(d), and for supplemental security income, Title XVI, 42 U.S.C.A. § 1382c(a), are the same in all relevant

2

the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## Background

Deborah Lewis has a high school education and training as a certified nurse's assistant. She previously worked as a nurse's assistant, a cashier, and a store clerk. Her insured status for purposes of Title II benefits expired at the end of 1994 when she was twenty-eight years old.

Lewis claimed disability due to impairments caused by injuries to her back in November of 1990 and May of 1991 and an injury to her knee in September of 1991. Despite those impairments, during 1992, her treating doctor, Dr. Hansen, noted her improvement. In May of 1992, Dr. Hansen found that she could do sedentary work with a minimum of lifting and bending, if she could change positions. After a fall in July, Lewis complained of increased pain and radiating pain into her right arm. Based on MRI results and examination, Dr. Hansen diagnosed muscular

---

respects, for simplicity, the Title II regulations in Part 404 will be cited for both. See Sullivan v. Zebdley, 493 U.S. 521, 526 n.3 (1990).

3

pain.

In October of 1992, Dr. Forbes found no medical evidence of thoracic outlet syndrome or cervical radiculopathy, and in February of 1993 he stated that there was no evidence that Lewis's complaints of right arm pain were due to neurological problems. Dr. Forbes told Lewis that she could do any job that did not require lifting her hands to shoulder level repeatedly.

Lewis had surgery in December of 1992 to stabilize the patellar tendon in her left knee. In January of 1993, Dr. Hansen noted that she was doing remarkably well, walking and progressing with strengthening exercises, although she still had atrophy in her leg. In February, Dr. Hansen noted no further evidence of patellar dislocation and that Lewis had regained fair to good muscle strength in her leg. Lewis again dislocated her patella in April of 1993, and in July she told Dr. Thatcher that she continued to have problems with her knee. A functional capacity evaluation done at Dr. Hansen's request in October of 1993 showed that Lewis was able to do sedentary work.

In November of 1993 Lewis told Dr. Hansen that she had occasional low back aches particularly after doing extra bending or lifting. She was in training to work as a medical records librarian, and Dr. Hansen felt she could do that work. In August of 1994, Lewis underwent surgery to remove hardware left in her

4

knee after her patellar surgery.

In November of 1994, Lewis complained of a recent onset of neck pain and arthralgia, but MRI and CT scans done at that time were normal. Examination by Dr. Ruel showed normal sensation despite some neck discomfort. Dr. Ruel diagnosed a probable soft tissue problem. Dr. Hansen found that all of her blood work was normal and that she did not seem to have an orthopedic problem.

In September of 1995, Lewis continued to complain to Dr. Hansen of left knee problems and low back and arm pain. She said she spent her days "up and about" and that she could sit for two hours at a time, stand for fifteen to thirty minutes at a time, and walk about a half a mile. She could lift ten pounds as long as she did not have to lift over her shoulder level. Upon examination Dr. Hansen found her straight leg raising and neurological signs were normal. He found no signs of thoracic outlet syndrome and found that she displayed good mobility in both hips and no sign of patellar displacement in either knee. Nevertheless, she complained of left knee pain with any touching and arm tenderness and pain when raising her right arm to shoulder level. Dr. Hansen also found several "Waddell signs," meaning that her pain complaints may not be organic in nature.

Although additional later medical records are summarized in the joint statement of facts, those records are not pertinent to

Lewis's application as they pertain to her condition more than one year after her covered period expired and do not include retrospective diagnoses relevant to her condition before the end of 1994.  See 42 U.S.C.A. § 423(d)(1)(A); see, e.g., Marcotte v. Callahan, 992 F. Supp. 485, 491 (D.N.H. 1997).

Lewis was represented by counsel and testified at the hearing before the ALJ held in February of 1996.  The ALJ found that Lewis had severe impairments due to chronic low back pain, thoracic outlet syndrome, and chronic instability of her left knee.  He also found that Lewis could not lift more than ten pounds, stand or walk for prolonged periods, or perform work that required climbing, balancing, kneeling, crouching, or crawling.  Nevertheless, the ALJ determined that Lewis retained the residual functional capacity to do sedentary work and that her additional non-exertional, postural limitations did not have an adverse impact on her ability to do sedentary jobs.  As a result, using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, Rules 201.28 and .29, he found that Lewis was not disabled.

## Discussion

Lewis challenges the ALJ's determination on two grounds.[3]

---

[3]Lewis's four page memorandum, submitted by counsel, consists of two full pages of quoted material from social security rulings, with no developed argumentation related to her

6

She contends that the ALJ erred in not finding that her complaints met or equaled the listed impairment for somatoform disorders at 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.07. She also relies on medical evidence from January and February of 1996, which found her limited in her ability to stoop, as a basis to contend that the ALJ erred in not calling a vocational expert to consider the effect of that limitation on her ability to do sedentary work.

A claimant will be presumed to be disabled if her impairment meets or equals the criteria of an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. See Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Disability based on a listed impairment is considered at step three of the sequential analysis. See 20 C.F.R. § 404.1520. At step three, the claimant bears the burden of showing that she is disabled due to a claimed impairment. See Dudley v. Secretary of Health and Human Servs., 816 F.2d 792, 793 (1st Cir. 1987).

A somatoform disorder is a mental impairment which is addressed in section 12.00 of Part 404, Subpart P, Appendix 1. Section 12.00 provides:

---

case, and only six sentences that present her objections to the ALJ's determination. Therefore, the court's interpretation of Lewis's objections to the ALJ's determination is considerably more developed than the presentation made to the court.

7

> The evaluation of a disability on the basis of mental disorders requires the documentation of a medically determinable impairment(s) as well as consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work and whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00A. Lewis did not claim a somatoform disorder in her application for benefits, and the parties' joint statement of material facts does not mention a somatoform disorder. Lewis does not point to any evidence in the record in support of that impairment. In fact, evidence in the record, psychological testing done in March of 1992, undermines such a diagnosis. Therefore, Lewis has failed to carry her burden to show that she meets or equals the listing for somatoform disorder.

Lewis's argument that the ALJ erred in failing to elicit vocational expert testimony about the effect of her limitation as to stooping is equally unavailing. The ALJ did not find that she was not able to stoop, and the record evidence for the pertinent period (within twelve months of her insured status) does not show that she was unable to stoop occasionally. See Social Security Ruling 83-14 as quoted in Lewis's memorandum at p. 1. The evidence Lewis relies on is from doctors' reports in January and February of 1996, more than twelve months after her insured status expired. The reports do not indicate a retrospective

8

diagnosis pertinent to the insured period.  See Marcotte, 992 F.
Supp. at 491.  Therefore, since substantial evidence exists in
the record to support the ALJ's determination that Lewis was
capable of sedentary work with some non-exertional limitations
that would not significantly reduce her ability to perform work
at the sedentary level, the decision that Lewis was not disabled
is affirmed.


## Conclusion

For the foregoing reasons, the claimant's motion to reverse
(document no. 8) is denied.  The Commissioner's motion to affirm
(document no. 9) is granted.  The clerk of court shall enter
judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

August 9, 2000

cc:  Robert E. Raiche Sr., Esquire
     David L. Broderick, Esquire

9