Swanick v. SSA                    CV-97-343-M    05/18/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Thomas Swanick,
    Plaintiff

v.                                          Civil No. 97-343-M

Kenneth S. Apfel, Commissioner
Social Security Administration,
    Defendant


**O R D E R**


Plaintiff, Thomas Swanick, moves for district court review pursuant to 42 U.S.C.A. § 405(g), and to reverse the decision of the Commissioner denying him social security benefits.  Swanick contends that the Administrative Law Judge ("ALJ"), Robert S. Klingebiel, erred in referring to the Medical Vocational Guidelines ("the Grid") rather than seek the opinion of a vocational expert, and improperly assessed the record, including the opinion of his treating physician.  For the reasons that follow, the decision of the Commissioner is reversed, and the case is remanded for further administrative proceedings.


**BACKGROUND**

The following material background information is summarized from the parties' joint statement of material facts.

Thomas Swanick filed applications for disability benefits and supplemental security income on March 2, 1995, on grounds

that he had been unable to work since February 1, 1994. Swanick contends that he was disabled by the effects of a stroke he suffered on February 1, 1994. Prior to that date, Swanick worked in masonry construction and had twenty-four years of experience. Swanick had a high school education and was forty-seven years old when he stopped working. Swanick reported that he had the stroke while working in Arizona in February 1994 and that he moved to New Hampshire to be with his family.

Swanick began medical treatment for the effects of the stroke on May 13, 1994, when he reported to personnel at the Veterans Administration Hospital ("VAH") in Manchester that he thought he had suffered a stroke on February 1. He described a weak feeling on his left side from head to toe since the incident, but denied blurred vision, shortness of breath, and chest pain. He admitted alcohol abuse and regularly smoking two packs of cigarettes per day. Physical examination revealed that his cranial nerves and motor sensory systems were intact, he was in no acute distress, and was oriented in three spheres. His blood pressure was measured at 218/148, but after receiving Librium (medication for treatment of anxiety) and hydration, his blood pressure dropped to 145/80. The assessment was alcohol-related hypertensive symptoms, and he was encouraged to stop drinking alcohol and to stop smoking. Quinopril was prescribed

(treatment for hypertension), and he was scheduled for reassessment in three days.

During his return visit to the VAH on May 16, Swanick reported that he felt better after taking his medication. He told the examiner that he could not work because his left side was "numb." His physical examination showed equal muscle strength and deep tendon reflexes in his arms and legs on both sides. He was advised to continue hypertension medication and to stop drinking and smoking. A CT scan provided inconclusive results. When Swanick returned to the VAH for a blood pressure check in June, he was put on Hydrochlorthiazide, a diruetic medication used to treat hypertension, and was again advised to stop smoking and drinking.

In July 1994, the New Hampshire Disability Determination Service ("DDS") had Swanick's medical records reviewed for an assessment of his residual functional capacity. Dr. Nault concluded that Swanick was able to occasionally lift up to fifty pounds, frequently lift and carry up to twenty-five pounds, and that he could stand or walk up to six hours a day and sit for six hours with normal breaks. Dr. Nault found no manipulative, postural, communicative, visual, or environmental limitations. Dr. Nault commented that Swanick's records indicated no perceptible deficits and found no evidence of sensory or strength loss on his left side.

During a psychiatric examination on August 1, 1994, Dr. Standow noted that Swanick walked normally and showed no unusual movements. Two weeks later in August, Swanick underwent a general medical examination to determine his eligibility for a Veterans Administration pension. Swanick said that he smoked and drank beer. He told the examiner that he may have had a stroke and that he took Hydrochlorthiazide and Quinopril for his blood pressure. He had no complaints about his physical condition. His physical examination showed no significant problems (other than blood pressure) or deficits, and his neurological examination again revealed equal motor strength in right and left sides in all extremities. He demonstrated good repetitive motion with his fingers and his reflexes were equal bilaterally. The evaluation report diagnosed essential hypertension, increased alcohol consumption, status "post transient ischemic attack," and a liver test provided abnormal results.

In March 1995, the DDS referred Swanick to neurologist Robert Thies, M.D., for an independent medical examination. Swanick described the incident in February 1994 that he believed to have been a stroke and told Dr. Thies that his left arm had been clumsy since that time and that he had reduced sensation on the left side of his face. Dr. Thies performed a motor examination that showed Swanick had clumsiness of rapid alternating movements of the left hand, a downward drift of his

4

left arm, and that his reflexes were absent. The sole of his left foot was "upgoing," while the right sole was "downgoing," and he favored his left leg slightly when walking. Dr. Thies noted "a question of a patch and impersistent decrease in appreciation of touch over the left hand as compared to the right." He concluded that his examination and Swanick's descriptions were compatible with deep right cerebral dysfunction and that he was a candidate for a lacunar stroke because of his high blood pressure.

A consulting non-examining physician reviewed Swanick's medical records on April 5, 1995, and concluded that he could occasionally lift up to twenty pounds and frequently lift and carry up to ten pounds. He could stand or walk for up to six hours in a day and could sit for six hours with normal breaks. The consulting physician found limitations on Swanick's ability for climbing, handling, and fingering.

In May 1995, Swanick had another neurological evaluation. Dr. Astarjian, the examiner, found that Swanick's motor examination showed a definite drift in his left arm, and weakness and pronation in his left leg. The sensory examination showed discrepancy between the left and right side of the body with the left side being at least fifty percent less perceptive of a pin prick, although other sensory perceptions were intact. Dr. Astarjian believed that Swanick had suffered a stroke, and that

5

his moderate left-sided weakness would hinder him from returning to his previous occupation as a pipe fitter although he could perform desk work.

During a psychological evaluation in August 1995, Swanick told Dr. Berke that "his brain works fine" but that his left side was weak and that he got tired doing physical work. He admitted drinking a six pack of beer a day, as he had for twenty years, and Dr. Berke noticed alcohol on his breath. Dr. Berke found that Swanick had an average ability to perform tasks involving sustained attention. He diagnosed alcohol abuse and an unspecified personality disorder and concluded that his ability to work might be compromised by his "cynicism" and perhaps a lack of motivation.

In January 1996, at the request of Swanick's attorney, Dr. Gordon of the VAH prepared an assessment of Swanick's ability to perform work-related activity, concluding that Swanick could not lift or stand, that he could sit for two to three hours, but that he could not climb, balance, stoop, crouch, kneel, or crawl, and that reaching handling, feeling, and pushing or pulling were affected by his impairment. Also in January, a repeat CT scan confirmed that Swanick had suffered a right lacunar infarct that was unchanged since May 1994. Swanick's medical records indicate that he continued to smoke and drink throughout the period.

Swanick's applications for benefits were initially denied, and he was granted a hearing before an ALJ.  He attended with his attorney and testified about the effects of the stroke on his strength and activities.  He testified that his whole left side was affected causing him to tire easily so that he could not stand for more than twenty minutes without resting and had to rest climbing two flights of stairs.  Describing the weakness of his left side, he said that he could not hold bread with his left hand long enough to make turkey stuffing.  He said that he could vacuum, clean, and dust his apartment but that he needed assistance for bigger tasks like moving things around.  He testified that he did not drive a car anymore because his left arm and leg did not react reliably.

The ALJ determined that Swanick was not able to return to his past work as a masonry pipe layer but that he was not disabled from all work.  He denied Swanick's applications for benefits in a decision issued on January 26, 1996.  The Appeals Council considered additional arguments and medical exhibits submitted by Swanick's counsel, that were not considered by the ALJ, but concluded that the additional materials did not provide a basis for changing the ALJ's decision denying benefits.

**Standard of Review**

7

After a final determination by the Commissioner and upon request by a party, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g). The Commissioner's factual findings are conclusive if supported by substantial evidence. Id.; Irlanda Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); see also Rodriguez Pagan v. Secretary of H.H.S., 819 F.2d 1, 3 (1st Cir.1987).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence. Ortiz, 955 F.2d at 769; Burgos Lopez v. Secretary of H.H.S., 747 F.2d 37, 40 (1st Cir. 1984). The court will defer to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. Frustaglia v. Secretary of H.H.S., 829 F.2d 192, 195 (1st Cir. 1987). Accordingly, the Commissioner's decision to deny benefits will be affirmed unless

8

it is based on a legal or factual error.  Manso-Pizarro v.
Secretary of H.H.S., 76 F.3d 15, 16 (1st Cir. 1996).


## DISCUSSION

On appeal, Swanick challenges the ALJ's determination, made
at the fifth step of the sequential analysis, that he was not
disabled during the relevant period.[1]  At the fifth step, the
burden shifts to the Commissioner to show that despite the
claimant's severe impairment, he retains the residual functional
capacity to do work other than his prior work, and that work the
claimant can do exists in significant numbers in the national and
regional economies.  20 C.F.R. §§ 404.1520(f), 416.920(f);
Keating v. Secretary of H.H.S., 848 F.2d 271, 276 (1st Cir.
1988).  Swanick contends the ALJ did not properly evaluate the
evidence of his reduced physical functional capacity caused by

---

[1]  The ALJ is required to consider the following five steps
when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial
    gainful activity at the time of the claim;
    (2) whether the claimant has a severe impairment that
    has lasted for twelve months or had a severe impairment
    for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed
    impairment;
    (4) whether the impairment prevents or prevented the
    claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the
    claimant from doing any other work.
20 C.F.R. § 404.1520 (1995); see also 20 C.F.R. § 416.920 (1995).

his stroke and erred in using the Grid to determine that he was not disabled.

**A.    <u>Record Evidence of Functional Capacity</u>**

Swanick argues that the opinion submitted by his treating physician, Dr. Gordon, was not given proper weight.  The parties assume that Dr. Gordon's opinion is part of the administrative record for review even though the Appeals Council, not the ALJ, received and evaluated the opinion.[2]  In addition, Swanick contends that the ALJ did not properly assess other evidence of his physical limitations.  Because the court finds that the ALJ's reliance on the Grid was error in this case, requiring remand for an opinion by a vocational expert, it is not necessary to resolve issues about the weight to be given Dr. Gordon's opinion, or the ALJ's assessment of other record evidence.

**B.    <u>Use of the Grid</u>**

---

2  Most courts considering the question have held that evidence not considered by the ALJ but submitted to and considered by the Appeals Council pursuant to 20 C.F.R. § 404.970(b), which then denied review, may nevertheless be considered as part of the administrative record on appeal.  <u>See, e.g.</u>, <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir. 1996); <u>Box v. Shalala</u>, 52 F.3d 168, 171 (8th Cir. 1995); <u>O'Dell v. Shalala</u>, 44 F.3d 855, 859 (10th Cir. 1994); <u>Keeton v. Department of Health and Human Servs.</u>, 21 F.3d 1064, 1067-68 (11th Cir. 1994); <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991); <u>but see</u> <u>Perkins v. Chater</u>, 107 F.3d 1290, 1294 (7th Cir. 1997); <u>Casey v. Secretary of Health and Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993).

10

The ALJ relied on the Grid for light work, Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202.21, to determine that a significant number of jobs existed that Swanick could do despite his limitations.  The ALJ found that Swanick was a "younger individual," with a high school equivalency diploma, and without transferable work skills.  He found that Swanick retained the exertional capacity for light work limited by his "inability to perform rapid alternating movements of his non-dominant left hand."  The ALJ concluded that Swanick's dexterity limitation "impacts very few jobs in the light or sedentary job base" and determined, based on the Grid, that Swanick was not disabled.

The Grid provides a "streamlined" method for determining whether jobs, which claimant can perform, are available when a claimant's nonexertional impairments do not significantly affect his ability to perform the full range of jobs available at the appropriate exertional level.  Heggarty v. Sullivan, 947 F.2d 990, 995-96 (1st Cir. 1991).  "Where a claimant has nonexertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform."  Id. at 996.  Limitations in the use of the hands necessary for work is a nonexertional impairment.  Heggarty, 947 F.2d at 996.

11

The functional capacity necessary to perform the full range of light work includes the capacity to do sedentary work as well. 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202(a). The ALJ found that Swanick's limitations would impact "very few jobs in the light or sedentary job base." Because most sedentary jobs require use of the hands in working with small objects, however, an inability to perform jobs requiring bilateral manual dexterity significantly reduces the number of jobs available at the sedentary level. Id. at Rule 201(h); see also Heggarty, 947 F.2d at 996. For that reason, use of the Grid is inappropriate when a claimant limited to sedentary work is further limited by nonexertional dexterity impairments. Id. at 997; Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

The question then remains as to whether the record includes significant support for the ALJ's conclusion that Swanick's limitations would not significantly impact the number of light and sedentary work jobs that he could do. Social Security Ruling 83-10 explains that jobs in the light work exertional level would require "use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work." The regulations explain that light work either involves a good deal of walking and standing or, if sitting, requires "some

12

pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567, § 416.967.

The ALJ found that Swanick could not perform jobs requiring rapid alternating movements with his left hand. The undisputed medical record, however, suggests a broader limitation. Neurologists' examinations found that Swanick experienced "downward drift" of his left arm, his reflexes were absent, his left leg and arm showed weakness, and a marked decrease (fifty percent) in feeling a pin prick on his left side.[3] Swanick testified that he had not driven a car since his stroke because of the uncertain response of his left arm and leg. A consulting non-examining physician's residual functional capacity evaluation in April 1995 concluded that Swanick's abilities for both gross and fine manipulation were limited.

Given the nature of Swanick's nonexertional limitations in using his left arm and leg, including the ALJ's finding that Swanick could not perform the full range of light and sedentary work, substantial evidence is lacking in this record to support the ALJ's finding that Swanick's limitations would not substantially impact the jobs available at the light exertional level. Accordingly, the ALJ's reliance on the Grid to meet the

_____

3 Although earlier general medical examinations reported no strength or sensory deficits on the left side, generally the medical findings of a specialist, such as the neurologists, are given more weight in the area of expertise. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

13

Commissioner's burden at step five was erroneous, and the case must be remanded to allow the ALJ to take further vocational evidence. Upon remand, the record shall be reopened for additional evidence pertinent to the period of application.

### Conclusion

For the foregoing reasons, the plaintiff's motion to reverse the decision of the Commissioner (document no. 7) is granted; the motion to affirm the decision (document no. 8) is denied; and the case is remanded for further administrative proceedings that are consistent with this order. The clerk of court is directed to close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 18, 1998

cc:  David L. Broderick, Esq.
     Raymond J. Kelly, Esq.

14