NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 12, 2017
Decided January 8, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1597

| | |
|---|---|
| DANNY McFADDEN, <br> *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Eastern District of Wisconsin. |
| *v.* | No. 2:15-cv-01268-WED |
| NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br> *Defendant-Appellee*. | William E. Duffin, <br> *Magistrate Judge*. |

## O R D E R

Danny McFadden challenges the denial of his application for Disability
Insurance Benefits and Supplemental Security Income. An administrative law judge
found that he was severely impaired by myriad medical conditions, including obesity,
hypertension, diabetes, esophagitis, acid reflux disease, left shoulder rotator cuff
tendinitis, varicose vein disease, degenerative joint disease in the left knee, and a torn
medial meniscus in the right knee. But the ALJ concluded that these impairments were
not disabling. A magistrate judge, presiding by consent, upheld the ALJ's decision.
McFadden contends on appeal that the ALJ insufficiently explained her decision to
assign little weight to his treating physician's opinion. He also argues that the Appeals

Council erroneously rejected his additional evidence, which he maintains was "new and material." We affirm.

## Background

McFadden drove a transport bus for handicapped people until his bus was rear-ended by a semi-truck in 2007. Since then he has complained of back and knee pain, has gained roughly 30 pounds (exacerbating his obesity), and has developed type II diabetes, varicose vein disease, esophagitis, and acid reflux disease. He was 47 years old as of his original disability onset date—mid-2007—which fell roughly a month after the accident. McFadden later amended his onset date to his 50th birthday, August 23, 2009, which had the effect of shifting his age category under the Social Security regulations to the more favorable category of a "[p]erson closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d) (2015).

Dr. Joan Ordman, an agency physician, had reviewed McFadden's initial application and completed a Disability Determination Explanation in November 2011. Dr. Ordman recognized that McFadden felt some discomfort, but concluded that he could still move about and use his limbs in a "satisfactory manner." She believed that McFadden could stand or walk six hours out of an eight-hour workday and he could lift 25 pounds occasionally and 20 pounds frequently. Although she credited McFadden's complaints of "severe knee problems and limited movement causing pain," she stated that he could occasionally kneel, crouch, and crawl, and that he could freely stoop.

Dr. Agnes Lun, another agency physician, examined McFadden in September 2012. She reported that McFadden had difficulty standing, relied heavily on a cane, and had an antalgic gait (a pain-induced limp). In Dr. Lun's opinion, McFadden could stand for only 10 to 15 minutes at a time, walk only one block, and could lift 20 to 25 pounds (but carry only 10 to 15 pounds).

An agency consultative physician, Dr. Mina Khorshidi, reviewed Dr. Lun's report shortly after it was made and produced her own report. Dr. Khorshidi considered Dr. Lun's opinion overly restrictive because it relied on McFadden's subjective report of symptoms and was not substantially supported by other evidence in the record. Dr. Khorshidi's own conclusions echoed Dr. Ordman's, stating that McFadden was fit for light work and could stand or sit for up to six hours in a work day. She found his lifting slightly more limited (only 20 pounds occasionally and

10 pounds frequently) and his posture slightly less limited, finding only that he could not kneel more than frequently.

The last opinion came from McFadden's primary care physician since 2009, Dr. Adedapo Okusanya. Dr. Okusanya treated McFadden primarily for his diabetes (which often went uncontrolled), hypertension, chronic pain, and acid reflux. He also directed McFadden to specialists for surgery on his varicose veins and knee joints. On a two-page form dated May 9, 2013, Dr. Okusanya circled answers to questions regarding McFadden's functional capacity. Dr. Okusanya assigned limitations far more severe than those suggested by the other doctors, but he provided practically no comment or explanation. On the form, Dr. Okusanya's answers reflected that McFadden could stand or sit for only 15 minutes at a time and only two hours each per day; he also was limited to lifting five pounds, and that only occasionally. Dr. Okusanya advised that McFadden never could stoop, perform fine manipulation with his hands, or tolerate heat, cold, noise, or dust; and only occasionally could he work with his arms or drive a car. He opined that McFadden would be unreliable at work, would miss work occasionally because of pain, and would need to elevate his legs frequently.

Dr. Cardone, another treating physician who had treated McFadden's varicose veins disease in 2011 and 2014, did not provide an opinion. His discharge instructions after McFadden's surgery, however, stated that McFadden needed to ice and elevate his legs to recover, but could resume normal activities.

At his hearing before the ALJ, McFadden testified that he suffered from continuing pain in his knees that was lessened only by medication, which he had obtained from three different providers since his accident. Regarding his daily living, he said he could, with difficulty, prepare food, complete errands, and visit with family. He testified that he often needed to change position from sitting to standing and could sit for only 45 minutes to an hour and stand up to 15 minutes at a time. He estimated he could lift only 8 to 10 pounds, a condition he blamed on arthritis in his fingers and elbows. His most comfortable position was reclining with his legs above his heart, and he testified that he elevated his legs three times daily. When asked about past drug use, McFadden attested that he last smoked marijuana in 2010, but the ALJ noted that he had been denied pain medication based on his positive tests in early 2013 for marijuana and cocaine, which McFadden then admitted to using.

In March 2014 the ALJ issued a decision in which she found that McFadden's testimony and description of his symptoms were "not entirely credible." She

highlighted McFadden's initial denial of his history of drug abuse and his failure to comply with other treatment options for his ailments, such as physical therapy. She concluded that there was no reason to believe McFadden needed to elevate his legs during a work day; the discharge instructions that advised elevating his legs covered only the period immediately following surgery and thus were entitled to "little weight."

Similarly, the ALJ gave "little weight" to Dr. Okusanya's opinion because, she said, it was "not well supported by objective medical evidence" and was "inconsistent with substantial other evidence." She criticized his opinion for neither identifying the impairments on which he based his conclusions nor providing clinical findings or diagnostic test results. The ALJ also determined that the reliability of Dr. Okusanya's opinion was undermined by his failure to substantiate his finding that McFadden could not perform fine manipulation with either hand.

But the ALJ gave the opinions of Drs. Lun, Khorshidi, and Ordman "great weight." Their opinions, she found, were supported by substantial evidence, particularly the clinical findings and diagnostic tests reflecting that the osteoarthritis in McFadden's knees was mild. She also found their opinions supported by McFadden's statements that he could care for himself independently, cook, shop, drive, and perform household chores.

Applying the required five-step analysis, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a), the ALJ found that McFadden was not disabled. She determined that McFadden had not engaged in substantial gainful activity since his alleged onset date (step one) and that most of his conditions ("degenerative joint disease of the knees status post left knee arthroscopy (2007) and status post right knee arthroscopic debridement of torn medial meniscus (April 2010), hypertension, obesity, diabetes mellitus, esophagitis, acid reflux disease, varicose vein disease status post ablation procedures, and left shoulder rotator cuff tendinitis") were severe impairments (step two). But McFadden's hand problems, she found, were not severe impairments—the treated ganglion cyst on his wrist would not limit him for more than 12 months and there was no evidence of treatment for arthritis in his fingers. She concluded that none of McFadden's impairments equaled a listed impairment (step three). She then found that McFadden had the Residual Functional Capacity (RFC) to perform light work with limitations: he could only occasionally kneel or carry 15 pounds; could never crouch, crawl, or be exposed to hazards; could stand only 15 minutes at a time, walk no more than one block, and needed the option to use a cane and to alternate between sitting and standing, with no limit on his ability to sit. These limitations prevented McFadden from performing his

past work as a home attendant, driver, and laborer (step four). Based on the testimony of a vocational expert (VE), however, the ALJ concluded that McFadden could perform jobs such as general office clerk, counter clerk, and information clerk (step five).

The Appeals Council denied review. McFadden had included in his appeal 44 pages of medical records from the Center for Pain Management, reflecting treatment he received for his back and shoulder pain from March to September 2013. The Council provided only a boilerplate denial, stating that McFadden's additional "information does not provide a basis for changing the Administrative Law Judge's decision."

A magistrate judge, presiding by consent, upheld the ALJ's decision. Of relevance for this appeal, the magistrate judge concluded that the additional evidence that McFadden submitted to the Appeals Council was neither new nor material because it predated the hearing and further supported the ALJ's adverse credibility finding—as he had stopped treatment at the Center after again being denied narcotics.

**Analysis**

McFadden initially presented three arguments on appeal: (1) the ALJ erred in discounting Dr. Okusanya's opinion with little reasoning; (2) the ALJ failed to follow Social Security Ruling 83-12, requiring that she "consider the extent of any erosion of the occupational base"; and (3) the Appeals Council erred when it refused to consider additional evidence that he believes to be new and material.

The Commissioner contends that McFadden waived the first two arguments by not properly presenting them to the magistrate judge. In the district court McFadden had a different attorney, who had focused his appeal on the sufficiency of the hypothetical posed to the VE and Dr. Okusanya's opinion that McFadden needed to often elevate his legs. McFadden concedes that his argument based on SSR 83-12 was forfeited, but we believe he adequately preserved his contention that the ALJ improperly weighed Dr. Okusanya's opinion.

McFadden principally argues that the reasons given by the ALJ were insufficient to deny Dr. Okusanya's opinion controlling weight under the treating-physician rule, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the regulations that apply to claims filed before March 27, 2017, a treating physician's opinion is entitled to controlling weight if

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. *Id.*[1]

We conclude that substantial evidence supports the ALJ's determination that Dr. Okusanya's opinion was not well supported by objective medical evidence and was contradicted by other evidence in the record, including the opinions of the consulting physicians. *See Bates v. Colvin*, 736 F.3d 1093, 1099–1100 (7th Cir. 2013). As the ALJ highlighted, Dr. Okusanya's opinion does not substantiate its dire picture relative to the other doctors. Its reliability is further undermined by its unsupported limitation on fine manipulation, a finding at odds with the absence of any evidence that McFadden had received treatment for arthritis in his hands.

McFadden first challenges the ALJ's conclusion that Dr. Okusanya's checklist form did not cite impairments or provide clinical findings to support his opinion. He quotes *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015), in which we said that a doctor "was not obligated to . . . provide any reasons" to justify a checkbox opinion. But McFadden misconstrues the case: *Minnick* decided that an ALJ erred by adopting the unexplained checkbox opinion of the nontreating doctor to which his quotation refers. *Id.* A treating physician's opinion is given more weight by virtue of the treating physician's ability to give a "detailed, longitudinal picture" and to provide insight "that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2). The ALJ reasonably demanded from Dr. Okusanya some explanation for finding limitations so much more severe than those recognized by other doctors, and she was entitled to discount his opinion for not providing that explanation. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion."); *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) ("Even though a claimant's condition may worsen, a medical expert is obligated to point to objective medical evidence to explain the worsening prognosis.").

McFadden also contends the ALJ improperly rejected Dr. Okusanya's opinion by "cherry picking" a single unsupported limitation on fine manipulation. But the ALJ did not "cherry pick"; she reviewed the record and directly confronted the evidence that contradicted her decision and supported Dr. Okusanya. *See Moore v. Colvin*, 743 F.3d

---

[1] The treating physician rule was eliminated by the Social Security Administration for claims filed after March 27, 2017. Opinion evidence is now governed by 20 C.F.R. §§ 404.1520c, 416.920c (2017).

1118, 1123 (7th Cir. 2014). Substantial evidence supports her conclusion that McFadden had not been treated for arthritis in his fingers and did not need to elevate his legs during work hours. For instance, a 2012 diagnosis of "relatively mild" degenerative disease in McFadden's fingers appears in the record but nothing more. Similarly, the discharge instructions were the only evidence in the record that McFadden needed to elevate his legs, and those instructions related only to the recovery period immediately after his varicose veins surgery and thus were appropriately given "little weight" outside of that period. Contrary to McFadden's argument, the ALJ properly viewed Dr. Okusanya's opinion in light of the whole record when she thoroughly reviewed the objective medical evidence before concluding that Dr. Okusanya's opinion warranted "little weight."

McFadden finally contends that the ALJ could not discount the opinion for lack of explanation, but had "a duty to solicit additional information" under our decision in *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(3)). But an ALJ may evaluate the explanations provided to support an opinion and "need not recontact the source every time she undertakes such an evaluation." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Moreover, *Barnett* relied on § 404.1527(c)(3), and that regulation was eliminated two years before McFadden's hearing. *See* 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012).

Finally, McFadden contends that the Appeals Council committed reversible legal error when it rejected evidence that, he believes, is "new and material." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (recognizing ambiguity in Council's boilerplate response and remanding because new and material evidence was rejected erroneously). Because the evidence was all dated before September 2013 and the hearing was in February 2014, the commissioner contends the evidence was "in existence or available to the claimant at the time of the administrative proceeding" and thus not "new" under *Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015) (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). McFadden argues that we applied the wrong standard in *Stepp* and contends his evidence is "new" simply because it was "[n]ot part of the claim(s) record as of the date of the ALJ decision," HEARINGS, APPEALS AND LITIGATION LAW MANUAL (HALLEX) § I-3-3-6(B) (2015).

We need not decide today the proper definition of "new" for Appeals Council review because the evidence was in any event immaterial. The parties agree that evidence is material "if it creates a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.'" *Stepp*, 795 F.3d

at 725 (quoting *Perkins*, 107 F.3d at 1296). The evidence includes a diagnosis of lumbosacral degeneration otherwise absent from the record, but it also shows that McFadden discontinued treatment at the Center for Pain Management after being weaned off of narcotics because of drug abuse. The ALJ had highlighted precisely this chain of events at earlier pain clinics when she concluded that McFadden was not a credible witness. This evidence bolsters the ALJ's conclusion and leads us to believe that the Commissioner would maintain her determination that McFadden was not disabled.

Because substantial evidence supports the ALJ's findings and the Appeals Council did not legally err in rejecting the evidence presented to it, we AFFIRM.